TEICH GROH
691 State Highway 33
Trenton, New Jersey 08619
Phone: (609) 890-1500
Facsimile No.: (609) 890-6961
Email: cknowlton@teichgroh.com
Attorneys for the Debtor
Carol L. Knowlton, Esq.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: | :CHAPTER 11 |
| Liza Price Rappaport., | : CASE NO.: 11-37107-CMG |
| Debtor. | :Hearing Date: September 20, 2013 |

BRIEF IN SUPPORT OF MOTION TO EXPUNGE THE
CLAIM OF THE RIDGE AT BACK BROOK, LLC

Carol L. Knowlton, Esquire
TEICH GROH
691 State Highway 33
Trenton, New Jersey 08619
Phone: (609) 890-1500
Email: cknowlton@teichgroh.com
Attorneys for the Debtor
Liza Price Rappaport

## STATEMENT OF FACTS

The Debtor, Liza Price Rappaport, filed this voluntary Chapter 11 proceeding on September 15, 2011.

Prior to her filing of the Bankruptcy, she had been a member of the golf club, The Ridge at Back Brook, LLC ("the Ridge"). She had fallen behind in the payment of her annual dues; The Ridge had instituted collection action and obtained a judgment against her in May of 2011.

The Debtor's Plan rejects the executory contract with The Ridge. The Plan was confirmed on February 5, 2013, and became binding upon all parties upon the Effective Date, which was the date upon which the Order Confirming the Plan became a Final Order.

During the course of the bankruptcy, The Ridge has filed four (4) Proofs of Claim. This motion seeks to expunge all of the claims; in the alternative, the Debtor seeks to expunge the second, third, and fourth Proofs of Claim, and to reduce the first claim, as explained below.

# LEGAL ARGUMENT

## I. Debtor Has the Right to Reject the Executory Contract Pursuant to 11 U.S.C. § 365(a)

As a Debtor-in-Possession, the Debtor has the rights, powers, and duties of a trustee, pursuant to 11 U.S.C. § 1107(a), which provides, in pertinent part:

> **§ 1107. Rights, powers, and duties of Debtor-in-Possession**
>
> (a) … a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

The Bankruptcy Code, at § 365(a) provides that "… the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Accordingly, the Debtor had the right to reject her contract with The Ridge. The Debtor did reject the contract in her Plan and in her Disclosure Statement. The Debtor's Plan was confirmed by order dated February 5, 2013. The provisions of the Plan became binding on all parties upon the Effective Date of the Plan, which was the date upon which the Order Confirming the Plan became a final order.

The Ridge has filed a total of four (4) claims:

1. Claim #2-1 filed on September 26, 2011, in the amount of $59,037.10
2. Claim #2-2 filed on November 30, 2012, in the amount of $81,112.26
3. Claim #15-1 filed on February 20, 2013, in the amount of $525,786.05
4. Claim #16-1 filed on February 25, 2013, in the amount of $1,099,784.16

Not one of them is allowable as filed.

1. Claim #2-1 is based on the judgment obtained in State Court prior to the Bankruptcy. This claim calculates post-judgment interest to the date of the filing of the

2

petition to be $454.86. The post-judgment interest rate of 2011, however, was .5%, which would be $90.40 on the judgment amount. The Ridge's claim calculates interest at five (5) times the amount it should be. The total amount of the claim should be reduced to $58,672.64.

2.  Claim #2-2 is based on the same judgment as claim #2-1, but with interest calculated for more than a year after the bankruptcy filing. There is nothing provided in the Proof of Claim to demonstrate that The Ridge did anything to execute on its judgment. There is no proof of a levy or any other form of perfection of the lien. Accordingly, there is no basis for post-petition interest. Claim #2-2 should be expunged.

3.  Claim #15-1 lists the basis for the claim as "contract rejection damages." The claim lists two (2) components: "Contract Amount due through 2030," and "Total Judgment Amount through December 31, 2015."

The second component re-calculates interest on the same judgment that forms the basis of claims #2-1 and #2-2, so it is duplicative (again). There is still no basis for interest beyond the petition date, nor is there any explanation for the choice of the date to which interest was calculated.

There is no explanation as to how the amount of the first component was calculated, other than to refer to the attached chart. The chart is somewhat incomprehensible. Following are some of the problems:

    a.  The amounts on the chart do not seem to match the amount listed as the amount due (IE., nothing equals $525,786.05.)

    b.  Sales tax is listed – what sales tax? Sales tax based on what

amount?

    c.    The claim adds interest (called a finance charge0. What right is there to interest on an unsecured claim?

    d.    The claim appears to compound the interest, without demonstrating any authority to do so.

    e.    The amount listed as the annual dues appears to increase every few years, again without demonstrating any authority to do so.

In addition to the problems with the chart, the claim should be disallowed due to its speculativeness. As stated in the Debtor's certification in support of her Motion to Expunge The Ridge's Proofs of Claims, the projections contemplate that the Debtor will live until 2030, that she'll live in New Jersey for all of those years, that full membership in the club will not be achieved before 2030, that the Debtor's physical condition will not reach a point of a medical disability, that the club will still be operating in 2030.

The Debtor's <u>confirmed</u> Plan, however, provides for the sale of her primary residence within a certain period of time.[1] In the event that the property is not sold within that time, the Plan provides that the property will be sold at auction. So, far more likely than the speculations upon which the Proof of Claim is based is that the Debtor will have moved from New Jersey to Vermont by 2015. There is no reason, therefore, for projections through 2030.

<u>4</u>

---

[1] It is the Debtor's intention to apply for additional time to sell her primary residence, which is the farm located at 309 Wertsville Road, Ringoes, NJ 08551, before it goes to auction. The additional time to be requested is to the end of 2014.

Additionally, there is nothing in the Proof of Claim to demonstrate that The Ridge attempted in any way to mitigate damages.

4. Claim #16-1 lists the basis for the claim as "Contract 'rejection' damages (with 5% discount value)." This claim does not attach any supporting documentation or explanation. It should, therefore, be expunged.

## II. The Contract between The Ridge and the Debtor Should Be Voided Because There Was No "Meeting of the Minds."

There cannot be a contract without a "meeting of the minds":

> The meeting of the minds required to make a contract requires the parties to mutually agree and assent to the substance and terms of it. Black's Law Dictionary 886 (5th ed. 1979). It is elementary that a contract cannot be made when there has been no common understanding and mutual assent to the terms of a contract.
> *Driscoll v. State, Dept. of Treasury,* 265 N.J.Super. 503, 513, 627 A.2d 1167 (1993); *Knight v. New England Mutual Life Ins. Co.,* 220 N.J.Super. 560, 533 A.2d 55 (App.Div.1987).
>
> D.R. by M.R. v. East Brunswick Bd. Of Educ., 838 F. Supp 184, 191-192 (D.N.J 1993)

To put it another way:

> A meeting of the minds occurs when there has been a common understanding and mutual assent of all the terms of a contract.
> *Hillsdale Nat. Bank v. Sansone,* 8 *N.J.Super.* 497, 500, 73 A.3d 362 (Law Div.), aff'd 11 *N.J.Super.* 390, 78 A.2d 441 (App.Div.1951).
>
> Knight v. New England Mut. Life Ins. Co., 220 N.J.Super. 560, 565 (App.Div.1987)

These requirements to make a contract are well established.

> A common understanding of all the terms of a contract, and mutual assent are essential elements in the formation of every contract. In order to be binding, obligations expressed by the terms of a contract must find legal support in the deliberate intentions of all

5

> contributing parties. In the case of P. Ballantine & Sons v. Gulka, 117 N.J.L. 84, 186 A. 722, our former Supreme Court said, 'It is an established principle, fundamental n the law of contracts, that a contractual obligation arises from the mutual consent of the parties only. The true contract, whether it be express or implied in fact, has its source in the common intention of the parties.'"

Hillsdale Nat. Bank v. Sansone, 8 N.J.Super. 497, 500 (Law.Div. 1950)

In this case, the terms of the contract are so illusory, there could not have been a meeting of the minds. The agreement states that The Ridge can alter any part of the agreement and any of the Rules and Regulations at any time, and at The Ridge's sole discretion. It is impossible for the Debtor to have consented to the terms when she could have no idea what the terms would be.

For example, The Ridge, at least in theory, would have the right to raise the annual dues to $1,000,000.00. This may sound absurd, but according to The Ridge's position that it can change any term of the agreement at its sole discretion, it could be done. And if it were done, the Debtor would, according to The Ridge, be obligated to pay it under the contract. It is noteworthy that the agreement as currently written obligates a member's estate to pay annual dues for up to two years after the member's death, so having terms that stretch the bounds of reasonableness to the extreme is not out of the question here.

Moreover, Liza is not getting notices of amendments or other information from the club anymore, so she does not know when and how the agreement changes.

The Ridge's contract is worse than an adhesion contract. Though the terms of an adhesion contract may be onerous for one side, those terms usually cannot be amended to make

6

them worse without giving notice and the ability to opt out of the contract. A credit card contract is such an example. If the cardholder does not wish to adhere to new terms about to be imposed, he/she may cancel the contract and owe only what has been charged previously.

The cases involving The Ridge that were cited in The Ridge's brief are inapposite to the case presently under consideration. Those cases were litigated in State Court regarding State Court issues. This case involves federal law and the rights of the Debtor in bankruptcy.

Those cases also are distinguished from this case in that those cases all involved a dispute over past due fees only. There was no issue about future fees. It is also noteworthy that all of those decisions were by the same judge, so it is not surprising that his decisions did not contradict each other.

### III. Debtor Has a Right to Offset against Any Amount Deemed to Be Owed to The Ridge

In its own brief on, Page 2, The Ridge admits that it agreed to repay Debtor's deposit, which was $65,000.00, at a certain point in time. Also, it is the Debtor's contention that there would be additional money owed to her as a result of being a "B" member of the club. It does not appear that any credit has been given to the Debtor to offset the amount owed to her.

### CONCLUSION

For all of the reasons discussed above, the undersigned, on behalf of the Debtor, respectfully requests that all of the Proofs of Claim filed on behalf of The Ridge be expunged. In the alternative, the Debtor respectfully requests that claims #2-2, #15-1, and #16-1 be expunged.

TEICH GROH
Attorneys for the Debtor

Dated: September 18, 2013    BY: *Carol L. Knowlton*
Carol L. Knowlton, Esq.

7