CHL-19033
Phelan Hallinan & Diamond, PC
400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
856-813-5500
Attorneys for NATIONSTAR MORTGAGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:                                            : CHAPTER 11
     Leslie L. Price Rappaport

                                                : CASE NO. 11-37107  - CMG
     Debtor

                                                **: CERTIFICATION IN SUPPORT OF**
                                                **: RESPONSE TO DEBTOR'S MOTION TO**
                                                **: SELL PROPERTY FREE AND CLEAR OF**
                                                **: LIENS PURSUANT TO 11 U.S.C. §363**

I, Andrew L. Spivack, Esquire do hereby certify that I am an attorney at law in the State of

New Jersey for the Law Firm of Phelan Hallinan & Diamond, PC, and our firm represents

NATIONSTAR MORTGAGE (hereinafter referred to as "Respondent") in the above captioned

matter.  On behalf Respondent and in support thereof, the following Answers are provided as

follows:

**Background Information**:

1.  On or about June 25, 2004, the Debtor, Liza Price Rappaport, applied for and executed a

Uniform Residential Loan Application (hereinafter referred to as the "URLA") with Mortgage

Money Mart.  Attached hereto and marked as Exhibit "A" is a copy of the URLA.

2.  The URLA clearly indicates that the Debtor sought a loan to refinance her current

existing loans totaling $620,000.  See Exhibit A, Part I

3.  The Debtor under Part VI indicated that she had $620,000 in mortgage liens on the real

property known at 309 Wertsville Road, Ringoes, NJ 08551 (hereinafter referred to as the P.  See

Exhibit A.

4.   Part VII of the URLA indicates that Debtor sought to refinance her prior loans.  See

Exhibit A.

5.   On September 3, 2004, a closing with regard to the refinancing.

6.   At the closing the Debtor executed a Mortgage, Note, Adjustable Rate Rider and 1-4

Family Rider to America's Wholesale Lender.  Attached hereto and marked as Exhibits "B"- "E",

respectively.

7.   At the closing a HUD-1was executed by the closing agent and signed by Debtor.

Attached hereto and marked as Exhibit "F" is a copy of the HUD-1.

8.   The HUD-1 clearly indicates that First Pioneer received two payments at the closing.

See Exhibit "F", Part M.

9.   Part M, Line 1501 indicates that First Pioneer Farm Credit #4580486 received

$570,046.71.  See Exhibit "F"

10.  Part M, Line 1502 indicates that First Pioneer Farm Credit #4666259 received

$198,127.54.  See Exhibit "F"

11.  The total amount paid to First Pioneer Farm Credit as a payoff at the closing was

$768,174.25.  See Exhibit "F".

12.  On September 15, 2004, the Respondent's Mortgage was recorded with the Hunterdon

County Clerk in Book 2764, Page 259.  See Exhibit B.

13. Debtor filed the current bankruptcy case on September 15, 2011.


14. On October 21, 2011, Farm Credit East filed a Proof of Claim and it was docketed as

Claim 6-1.  Attached hereto and marked as Exhibit "G" is a copy of Farm Credit East's Proof of

Claim (hereinafter referred to as "Farm's POC")

15. Attached to Farm's POC are three (3) Lines of Credit Mortgages:

a. Loan 4580486, dated November 28, 2001, with the maximum amount of

$600,000 recorded with the Hunterdon County Clerk on November 29, 2001,

Book 2116 Page 778;

b. Loan 4666259, dated September 10, 2003 with the maximum amount of

$200,000 recorded with the Hunterdon County Clerk on October 27, 2003 Book

2561, Page 922; and

c. Loan 7031262, dated November 5, 2008 with the maximum amount of $800,000

recorded with the Hunterdon County Clerk on November 5, 2008 Book 3298,

Page 155.

16. The Loans listed above in Paragraph 15 (a) and (b) correlate to those loans that were

paid off in full during the refinance closing with Respondent.  See Exhibit F, Part M, Line 1501

and 1502.

17. Loan 7031262 was extended to Debtor and recorded after the recording of Respondent's

lien.

**Objection to Debtor's Motion to Sell Property Free and Clear of Liens Pursuant to 11**

**U.S.C. §363**

18. It is not necessarily Respondent's position that the sale be denied as it appears that the

current Sale Agreement of $1,350,000.00 maybe the fair market value.  However, the issue of

contention is that the Debtor is seeking to pay two junior lien holders before Respondent.

19. We should also note that the confirmed plan posited that the property value was $1.6

million.  Debtor is now attempting to sell the property for $1.35 million.  Such a dramatic

difference in value is problematic.

20. The evidence clearly indicates that Farm Credit East's liens were paid in full at the

closing on September 3, 2004 when they received $768,174.25.

21. The third lien held by Farm Credit East was issued November 5, 2008 and recorded on

November 5, 2008 Book 3298, Page 155 approximately four (4) years after Respondent's lien was

perfected.  As such, Farm Credit East's lien is junior to Respondent and should not be paid before

Respondent.

22. By accepting the $728,174.25 Farm Credit East essentially agreed to an equitable

subordination agreement with Respondent.  As such, their failure to close the line of credit moved

their mortgage lien to a subordinate position to Respondent.

23. Respondent objects to the sale of the Property as the Debtor is attempting to pay a junior

lien holder before the Respondent.  In essence, she is attempting to "leap frog" liens in order to pay

Farm Credit east before Respondent.

24. Respondent objects to the current Motion as it attempts to challenge the lien priority of

Respondent. This Motion is the improper forum for such a challenge and should be conducted

through Adversary Proceeding or a minimum though motions practice with an evidentiary hearing

if needed.  See SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin), 530 F.3d 230 (3d

Cir. Pa. 2008); Federal Rule of Bankruptcy Procedure 4003(d).

25. Lien priority is set by State Law and cannot be altered by a Plan provision.

26. The current Motion to the extent it seeks to establish lien priority should be converted to

an Adversary Proceeding or at a minimum be the sole subject of a motion with discovery and an

evidentiary hearing.

27. Furthermore, Respondent objects to the current Motion as the Debtor seeks to sell the

Property pursuant to 11 U.S.C §363 (f).

28. 11 U.S.C. § 363(f) states the following:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other the estate, only if—
>
> (1) Applicable non bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in a bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

29. The Debtor cannot use §363(f) to sell the Property as none of the conditions set forth

above are met.

30. Section 363 (f) (1) does not apply because applicable law – New Jersey real property

law – does not permit a sale free and clear without the payoff of the mortgage lien.  In addition, the

confirmation of the Chapter 11 Plan cannot change lien position.

31. Section 363 (f) (2) is not applicable as Respondent does not consent to the Debtor

 paying a junior lien holder before Respondent.

32. Subpart (3) of Section 363 (f) appears to be plainly written and its meaning appears to

be clear that under this section of the Bankruptcy Code assets of the bankruptcy estate are not sold

free and clear if the purchase price of the subject property is not "greater than the aggregate value

of all liens on such property".  Specifically, this equates to the face value of the debt secured by a

lien against the subject property regardless of the fair market value of the collateral.  See Clear

Channel Outdoor, Inc. v. Knupfer (In re PW, LLC, 391 B.R. 25 ([9th] Cir. BAP 2008); and also Ron

Pair Enters, 489 U.S. at 242 n.5 (Congress knows distinction between types of liens, and language

of the Bankruptcy Code should be interpreted in a way that acknowledges that knowledge); In re

Stroud Wholesale, Inc., 47 B.R. 999, 1002 (E.D.N.C. 1985), aff'd mem., 983 F.2d 1057 (4th Cir.

1986); In re Terrace Chalet Apartments, Ltd., 159 B.R. 821 (N.D. Ill. 1993); In re Perroncello, 170

B.R. 189 (Bankr. D. Mass. 1994); In re Feinstein Family P'ship, 247 B.R. 502 (Bankr. M.D. Fla

2000); In re Canonigo, 276 B.R. 257 (Bankr. N.D. Cal. 2002); In re WDH Howell, LLC, 298 B.R.

527 (D.N.J. 2003); In re Healthco Int'l, Inc., 174 B.R. 174 (Bankr. D. Mass. 1994); and 3

COLLIER ON BANKRUPTCY P 363.06[4][a] (Alan N. Resnick & Henry J. Sommer eds., 15th

ed. rev. 2008).

33. As such, since the sale price of the Property is $1,350,000 and the Payoff to Respondent

is $892,922.59 the sale price is enough to cover Respondent's lien in full.  However, the debtor is

attempting to pay a junior lien holder before Respondent.  Respondent objects to this position.

34. Paragraph (4) of Section 363 (f) does not apply as there is no "bona fide dispute" of

Respondent's ownership or lien priority.  It is Respondent's contention that the dispute currently

raised is between Respondent and Farm Credit East and must be dealt with before any monies are

disbursed.

35. Paragraph (5) of Section 363 (f) also cannot be applied.  This Section provides that a

sale free and clear may be authorized over the objection of a lien holder if such entity could be

compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.  The

"party invoking Section 363(f)(5) has the burden of proving that under the particular facts of the

case a qualifying legal or equitable proceeding may exist or could be brought that would result in

the lien holder being compelled to accept a money satisfaction of the creditor's interest, even if the

money satisfaction is an amount less than the full amount of the creditor's claim" In re Terrace

Chalet Apartments, 159 B.R. at 829; In re Jolan, Inc., 403 B.R. 866, 869 (Bankr. W.D. Wash.

2009).

36. With regard to Section 363(f)(5) it is Respondent's contention that while the sale of the

Property may proceed the proceeds of the sale cannot be distributed until the title issues are dealt

with in a separate proceeding.

37. Section 363(f)(5) is not applicable since Movant's lien is non-modifiable under 506(d)

of the Code pursuant to 11 USC §1322 (b)(2).  Section 1322 prohibits the modification of a claim

secured only by a security interest in real property that is the debtor's principal residence and there

are no additional collateral (i.e. assignment of rents) provisions to the Mortgage or Note.

38. Finally, it should be noted that the Debtor's Motion to Sell is also seeking to pay-off a

junior judgment creditor to the detriment of Nationstar.

**WHEREFORE**, Respondent, NATIONSTAR MORTGAGE, respectfully requests that this

Honorable Court deny Debtor's Motion to Sell Property Free and Clear of Liens Pursuant to 11

U.S.C. §363 in its entirety; unless Respondent's first mortgage lien is paid in full at the time of

closing.

Dated:  December 16, 2013                              **/s/  Andrew L. Spivack, Esquire**
                                                       Phelan Hallinan & Diamond, PC
                                                       400 Fellowship Road, Suite 100
                                                       Mt. Laurel, NJ 08054
                                                       Tel: 856-813-5500 Ext. 1566
                                                       Fax: 856-813-5501
                                                       Email: *andrew.spivack@phelanhallinan.com*