STARK & STARK, A Professional Corporation
Attn: Timothy P. Duggan, Esq. (TD 3231)
993 Lenox Drive, Bldg. 2
P.O. Box 5315
Princeton, New Jersey 08543-5315
PH: (609) 896-9060
Fax: (609)895-7395
Attorneys For Farm Credit East, ACA

|  |  |
|---|---|
| In Re:<br><br>LIZA PRICE RAPPAORT,<br><br>Debtor. | UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>CASE NO. 11-37107<br><br>CHAPTER 11<br><br>**FARM CREDIT EAST'S RESPONSE TO OBJECTION TO MOTION TO SELL PROEPRTY** |

## PRELIMINARY STATEMENT=

Nationstar Mortgage, for the first time, alleges it holds a first mortgage on the Debtor's

property located at 309 Werstvilles Road, Ringoes New Jersey (the "Ringoes Property"), despite

the fact that (1) the Debtor's Schedule D clearly sets forth the priority of Farm Credit East's

mortgages (1st and 2nd priority) and Nationstar's mortgage (3rd priority); (2) Farm Credit East

filed a proof of claim and attached the three mortgages securing its loan; (3) the Debtor filed a

plan of reorganization clearly stating that Farm Credit East has a first and second mortgage on

the Ringoes Property and Farm Credit East will get paid first when the property is sold; (4)

Nationstar filed a written objection to the Plan, which was overruled; and (5) the Plan was

confirmed. Farm Credit East relied upon its lien priority in agreeing to support the Plan. On the

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

other hand, Nationstar has sat on its rights and more than a year after the Plan was confirmed, is raising a priority dispute that was clearly before the Court when the Plan was confirmed.

Nationstar cannot challenge the terms of the Plan a year after it was confirmed, especially when Nationstar filed an objection to the Plan in question and failed to raise the priority issue. Farm Credit East and other creditors relied upon the Debtor's Plan in agreeing to confirmation. If the Court allows a late challenge to the claims that are specifically dealt with under the Plan, the Court will need to vacate the confirmation order to allow Farm Credit to object to the Plan and seek conversion.

Further, not one fact alleged by Nationstar is properly before this Court. Mr. Spivack cannot lay a foundation for any of the loan documents and clearly does not have firsthand knowledge of any of the facts in his Certification – it is all inadmissible hearsay,

## STATEMENT OF FACTS

The Debtor's filed a petition on September 15, 2011. On September 28, 2011, the Debtor filed Schedule D which clearly stated that Farm Credit East has a "1st Mortgage on 309 Wertsville Road" and a "2nd Mortgage on Wenrtsville Road". (See Exhibit "A" attached hereto). Schedule D also states that BAC Home Loans Servicing, LP holds a "3rd Mortgage on 309 Wertsville Road." Therefore, at the outset of the Chapter 11, the priority of the mortgages was disclosed to all creditors.

Farm Credit East timely filed a proof of claim (claim #6). As required by the Bankruptcy Rules, Farm Credit East attached the notes and mortgages and, more importantly, provided a detailed analysis of its claim as follows:

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

a.  Account No. 7031262101: $800,000 loan that provided additional funding and refinance of prior loans as evidenced by a Note dated November 5, 2008. Amount due is $726,756.70 broken down as follows:

| | |
|---|---|
| Principal | $725,487.68 |
| Interest to Sept. 15, 2011 | 1,269.02 |
| Total | $726,756.70 |

b.  Account No. 7089465101: $350,000 loan which re-financed prior loan and debts, as evidenced by a Note dated October 21, 2010. Amount due is $341,135.43 broken down as follows:

| | |
|---|---|
| Principal | $340,539.89 |
| Interest to Sept. 15, 2011 | 595.54 |
| Total | $341,135.43 |

2.  Security for Loan and Perfection: Farm Credit East holds mortgages against the following properties and rights of setoff to dividends and retained earnings as follows:

a.  Mortgage dated November 5, 2008, against property known as Block 18, Lots 24.01 and 24.01Q, Township of Delaware, Hunterdon County, New Jersey (see attached recorded mortgage);

b.  Mortgage dated November 28, 2001, against property designated as Block 23, Lots 13 and 13.03, Township of East Amwell, Hunterdon County, New Jersey (see attached recorded mortgage).

c.  Mortgage dated September 10, 2003, against property designated as Block 23, Lots 13 and 13.03, Township of East Amwell, Hunterdon County, New Jersey (see attached recorded mortgage).

d.  ***All notes are secured by the above referenced mortgages which all have cross collateralization covenants.***

(Exhibit B, Farm Credit Proof of Claim)(emphasis added).

Consistent with the Debtor's position, Farm Credit alleged that both loans are secured by the prior mortgages.

Moving on to the Plan. The Plan, which was confirmed, clearly states that Farm Credit East holds a first and second mortgage on the Ringoes Property and that "BAC Home Loans" will get the net proceeds after payments of "closing costs, real estate taxes, any carve-out, and Class 1 and 2 claims, in full satisfaction of its debt." (Plan ECF # 102, at 9-10). The Pan is clear – Farm Credit east gets paid first from the sale of the Ringoes Property.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

It I important to note that Nationstar's predecessor, Bank of America, filed an objection to the Plan. (See Exhibit "C" attached hereto). In the objection, the bank states "it wants a provision to protect them in the event the sale [or] refinance falls through." (Exh. C, ¶ 5). What is clear is that the bank consented to the sale, had notice of the lien priority, and failed to object to either.

The Plan was confirmed February 5, 2013.

### LEGAL ARGUMENT

Pursuant to 11 U.S.C. § 1141(a), the effect of confirmation of a plan of reorganization is to bind all parties to the terms of the plan. Corestates Bank, N.A.v. Huls Am., Inc., 176 F.3d 187, 194 (3rd Cir. 1999). "Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 463 (6th Cir. 1991). As a general rule, the "confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." Sanders Confectionery Prods. Inc. v. Heller Fin. Inc.., 973 F.2d 474, 480 (6th Cir. 1993). See also Browning v. Levy, 283 F.3d 761, 773 (6th Cir. 2002).

In the case at bar, it is clear that Nationstar has **actual notice** that both the Debtor and Farm Credit East were alleging that Farm Credit easrt had a first and second mortgage on the Ringoes Property. Schedule D and Farm Credit East's Proof of Claim make this clear – nothing was held back. Not only did Farm Credit East attach the notes and mortgages, but a summary of the claim that states "***All notes are secured by the above referenced mortgages which all have cross collateralization covenants."*** (Exh. B, Proof of Claim, Schedule).

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

Despite being advised of this issue at the early stages of the case, Nationstar took no action. Since no creditor was challenging Farm Credit East's lien position, Farm Credit East and the Debtor entered in settle discussions and proceeded towards confirmation.

The Debtor's Plan was confirmed by the Court and modified the rights of creditors, including Nationstar. Although Nationstar filed an objection to the Plan, it did not object to the property being sold or the proceeds being used to pay Farm Credit East – this fact is not disputed. As a result, Nationstar is barred by the Confirmation Order.\

Creditors must be able to rely upon confirmed Plan and court orders. It is truly untenable for Nationstar to seek to challenge lien priority at this late stage, especially since Farm Credit East relied upon the express terms of the Plan is consenting to its treatment.

STARK & STARK,
A Professional Corporation
Attorneys for Farm Credit East, ACA

By: /s/ *Timothy P. Duggan*
Dated: December 16, 2013          Timothy P. Duggan

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

# EXHIBIT "A"

B6D (Official Form 6D) (12/07)

In re    Liza Price Rappaport _____,    Case No. ___11-37107___
                              Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. 66528336-2 <br><br> BAC Home Loans Servicing, LP <br> PO Box 15222 <br> Wilmington, DE 19886-5222 | | | | | 3rd Mortgage <br><br> 309 Wertsville Road, Ringoes, New Jersey 08551 <br><br> Value $          1,600,000.00 | | | | 833,000.00 | 0.00 |
| Account No. 18, 24.01 <br><br> Delaware Township <br> PO Box 500 <br> 570 Rosemont Ringoes Road <br> Sergeantsville, NJ 08557 | | | | - | Property Taxes <br><br> 68 Upper Creek Road, Stockton, New Jersey 08559 <br><br> Value $            900,000.00 | | | | 22,000.00 | 0.00 |
| Account No. 7031262101 <br><br> Farm Credit East, ACA <br> PO Box 970039 <br> Boston, MA 02297-0039 | | | | | Mortgage <br><br> 68 Upper Creek Road, Stockton, New Jersey 08559 (cross-collateralized on 309 Wertsville Road, Ringoes, NJ 08551) <br><br> Value $            900,000.00 | | | | 726,600.00 | 0.00 |
| Account No. 7089465101 <br><br> Farm Credit East, ACA <br> PO Box 970039 <br> Boston, MA 02297-0039 | | | | - | 1st Mortgage <br><br> 309 Wertsville Road, Ringoes, New Jersey 08551 <br><br> Value $          1,600,000.00 | | | | 340,000.00 | 0.00 |
| _1_ continuation sheets attached | | | | | Subtotal <br> (Total of this page) | | | | 1,921,600.00 | 0.00 |

B6D (Official Form 6D) (12/07) - Cont.

In re    Liza Price Rappaport                                    Case No.    11-37107
                                                        ,
                                Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. 7031262101 | | | 2nd Mortgage | | | | | |
| Farm Credit East, ACA PO Box 970039 Boston, MA 02297-0039 | | - | 309 Wertsville Road, Ringoes, New Jersey 08551 (cross-collateralized on 68 Upper Creek Road, Stockton, NJ) | | | | | |
| | | | Value $            1,600,000.00 | | | | 726,600.00 | 326,600.00 |
| Account No. 603496751/800000802 | | | Mortgage | | | | | |
| First Bank 590 Lawrence Square Boulevard South Lawrence Township, NJ 08648 | | | 1) 1410 Highway 179, Lambertville, NJ; 2) 53 & 54 Old School H; 3) 10 Manners Road, Ringoes, NJ; and 4) 1408 Highway 179, Lambertville, NJ. | | | | | |
| | | | Value $            735,000.00 | | | | 524,600.00 | 0.00 |
| Account No. 23, 13 | | | Property Taxes | | | | | |
| Tax Collector East Amwell Township 1070 US Route 202 Ringoes, NJ 08551 | | - | 309 Wertsville Road, Ringoes, New Jersey 08551 | | | | | |
| | | | Value $            1,600,000.00 | | | | 27,000.00 | 0.00 |
| Account No. 101583133 | | | Property Taxes | | | | | |
| Tax Collector, Palm Beach County PO Box 3353 West Palm Beach, FL 33402-3353 | | - | Oak Tree Villas Cond, Unit A, Bldg. Y, West Palm Beach, FL | | | | | |
| | | | Value $            325,000.00 | | | | 6,078.31 | 0.00 |
| Account No. 8, 52.02 | | | Property Taxes | | | | | |
| West Amwell Township 150 Rocktown-Lambertville Road Lambertville, NJ 08530 | | | 1410 Highway 179, Lambertville, New Jersey 08530 and other properties | | | | | |
| | | | Value $            735,000.00 | | | | 6,000.00 | 0.00 |

Sheet  1  of  1  continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | 1,290,278.31 | 326,600.00 |
| Total (Report on Summary of Schedules) | 3,211,878.31 | 326,600.00 |

# EXHIBIT "B"

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT | District of New Jersey | | PROOF OF CLAIM |
|---|---|---|---|

| Name of Debtor:<br>Liza Price Rappaport | Case Number:<br>11-37107 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Farm Credit East | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|

| Name and address where notices should be sent:<br>c/o Stark & Stark, Attn: Timothy P. Duggan, Esq.<br>PO Box 5315<br>Princeton NJ 08543 | **Court Claim Number:**_____<br>*(If known)* |
|---|---|

| Telephone number:<br>(609) 896-9060 | Filed on:_____ |
|---|---|

| Name and address where payment should be sent (if different from above): | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Telephone number: | ☐ Check this box if you are the debtor or trustee in this case. |

| **1. Amount of Claim as of Date Case Filed:**  $        1,067,892.13 | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:**   loans to debtor
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**   ☒ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:**

**Value of Property:$**_____ **Annual Interest Rate**_____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $**_____ **Basis for perfection:**  recorded mortga

**Amount of Secured Claim: $**  1,067,892.13 **Amount Unsecured: $**_____

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest . You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>10/15/11 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Henry Grinbaum, Vice President | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## SCHEDULE TO PROOF OF CLAIM

1.  <u>Basis of Claim and Amount Due</u>: Farm Credit East made two loans to the debtor
    as follows:

    a.  <u>Account No. 7031262101</u>: $800,000 loan that provided additional funding
        and refinance of prior loans as evidenced by a Note dated November 5,
        2008.Amount due is $726,756.70 broken down as follows:

        | | |
        |---|---|
        | Principal | $725,487.68 |
        | Interest to Sept. 15, 2011 | 1,269.02 |
        | Total | $726,756.70 |

    b.  <u>Account No. 7089465101</u>: $350,000 loan which re-financed prior loan and
        debts, as evidenced by a Note dated October 21, 2010.  Amount due is
        $341,135.43 broken down as follows:

        | | |
        |---|---|
        | Principal | $340,539.89 |
        | Interest to Sept. 15, 2011 | 595.54 |
        | Total | $341,135.43 |

2.  <u>Security for Loan and Perfection</u>: Farm Credit East holds mortgages against the
    following properties and rights of setoff to dividends and retained earnings as
    follows:

    a.  Mortgage dated November 5, 2008, against property known as Block 18,
        Lots 24.01 and 24.01Q, Township of Delaware, Hunterdon County, New
        Jersey (see attached recorded mortgage);

    b.  Mortgage dated November 28, 2001, against property designated as Block
        23, Lots 13 and 13.03, Township of East Amwell, Hunterdon County,
        New Jersey (see attached recorded mortgage).

    c.  Mortgage dated September 10, 2003, against property designated as Block
        23, Lots 13 and 13.03, Township of East Amwell, Hunterdon County,
        New Jersey (see attached recorded mortgage).

    d.  All notes are secured by the above referenced mortgages which all have
        cross collateralization covenants.

3.  <u>Reservation of Rights</u>: Farm Credit East reserves all claims against any non-
    debtor entity, including Serendipity Farm, LLC, which is a co-borrower on both
    loans.  Nothing in this claim shall be deemed a waiver of any rights or remedies
    against Serendipity Farm, LLC.  Farm Credit East reserves the right to amend this
    claim and seek post-petition interest and attorneys fee.

# INSTALLMENT PROMISSORY NOTE

Fifing Ref. :    **Liza Price-Rappaport**

Printed: 11/03/2008

Date:    **11/05/2008**

| Association: | **First Pioneer Farm Credit, ACA** |
|---|---|
| Branch: | **Lebanon, NJ 028-012** |
| Note #: | **7031262** |
| Customer #: | **0000174664** |

1. **INDEBTEDNESS.** For value received, the undersigned (collectively: "**Borrower**") jointly and severally promise to pay to the order of **First Pioneer Farm Credit, ACA**, or the Holder of this Note (collectively: "**Lender**") the principal sum of **Eight Hundred Thousand Dollars and Zero Cents( $800,000.00 )** as hereinafter set forth in the section of this Note entitled LOAN ACCOUNT(S), together with interest per annum as set forth therein, all future advances and all other sums owing hereunder (collectively "**Indebtedness**").

2. **LOAN ACCOUNT(S).** The outstanding principal balance of the Indebtedness evidenced hereby is represented by the following loan account(s) ("**Account**" or "**Account(s)**") and interest shall accrue on the Account(s) in the manner so described. Indebtedness evidenced by any single Account is "**Account Indebtedness.**" At Lender's option, a change in interest rate or an optional future advance under the Account(s) may increase or decrease one or more of the following: the amount of each installment due, the amount of the final installment or the total number of installments due.

   **Account(s) # 101**          **VARIABLE INTEREST RATE ACCOUNT(S)**
   **Repayment:** The principal sum of $800,000.00, including any amount thereof which is not paid when due and all future advances to the Account(s) hereunder shall bear interest from the date incurred or advanced at the Lender's variable interest rate (hereinafter, "**Lender's Variable Rate**") as described herein and in the section of this Note entitled LENDER'S VARIABLE INTEREST RATE.

   **Interest Rate:** Lender's Variable Rate applicable to the Account(s) hereunder on the date hereof is **5.25 %** per year. Interest shall accrue to the date of receipt of payment. If the Indebtedness shall become due because of a default under this Note or for any other reason, then in addition to Lender's rights under the DEFAULT section of this Note, interest for the Account(s) hereunder shall continue under the provisions of LENDER'S VARIABLE INTEREST RATE program until all Account Indebtedness hereunder is paid in full.

   **Prepayment:** A payment, in any amount, made in advance of the scheduled payment date is a "**prepayment**". Borrower may make a prepayment of this Account, in whole or in part, at any time without a prepayment charge.

   **Installments.** Installments shall be made as follows:

   Installments of principal and interest, each installment in the amount of **$5,412.01**, shall be paid on the 1st day of each succeeding, consecutive calendar month, commencing **January 01, 2009**, until the Account Indebtedness is paid in full.

3. **FUTURE ADVANCES.** This Note is also given for optional future advances on all or any of the Account(s) described herein up to an **unlimited amount** of Indebtedness, which may be made or arise from time to time; but Lender is not obligated to make future advances. No future advance needs to be made or completed if an Event of Default has occurred, or if Borrower is in default on any Loan Document or on any other loan, obligation or Agreement with Lender or in which Lender has an interest. All future advances made hereunder shall be added to the unpaid principal balance of the associated Account hereof, and shall bear interest, as provided pursuant to the terms of such Account, at the rate applicable thereto from the date of such advance. Any advance made by Lender for taxes, liens, judgments, assessments, insurance premiums, environmental compliance or to protect collateral pursuant to any Loan Document, shall be payable on demand or, at Lender's sole option, such amount may be added to the unpaid principal balance of any Account or subaccount of any Account described herein or, if not already an active Account type, at Lender's Variable Rate as described in the Note section entitled LENDER'S VARIABLE INTEREST RATE and shall bear interest pursuant to the terms of such Account from the date of such advance.

4. **LENDER'S VARIABLE INTEREST RATE.** The "**Lenders Variable Rate**" (as hereinafter described) is a variable rate that corresponds to the applicable Interest Rate Tier, both of which shall be determined by Lender. The Interest Rate Tier assigned to Borrower may be changed at any time, pursuant to Lender's credit criteria for that Tier, which change in Tier may result in a change of the Variable Interest Rate applicable hereto. The Variable Interest Rate applicable to any Tier also may be increased or decreased at any time pursuant to Lender's Interest Rate Policy applicable to this Note and pursuant to the Farm Credit Act of

Installment Note - 11327

## INSTALLMENT PROMISSORY NOTE

Page: 2 of 3

Filing Ref. :    **Liza Price-Rappaport**

Printed: 11/03/2008

1971, as such policy or law may hereafter be amended. Such Rate is determined from time to time as a means of pricing loans to Lender's customers, including Borrower, and is neither tied to any external rate or index, nor does it necessarily reflect the lowest rate actually charged to any particular category of customers.

In adjusting Lender's Variable Rate, Lender considers certain standard factors set forth under Lender's Interest Rate Policy, including but not limited to, changes in its cost of funds, operating expenses, earnings requirements to meet certain capital objectives, credit risk factors, and the competitive environment, which factors may change during the term of the loan.

Borrower understands and agrees that (a) the Interest Rate Tier to which this loan is assigned may be changed at any time to any other Interest Rate Tier based on Lender's evaluation of a change in Borrower's credit quality, quality of collateral, costs of servicing the loan, and other factors which are set forth in Lenders Interest Rate Policy in effect at that time; and (b) The Interest Rate Tier may be automatically adjusted to the highest Interest Rate Tier if a default occurs under this Note or under any other Note or agreement between Borrower and Lender.

Lender's Variable Interest Rate shall not be limited by any State's usury or other legal interest rate limit. If Lender changes Lender's Variable Rate for one or more applicable Accounts, Lender will give Borrower notice of the change in rate as required by the then applicable law.

5.   **SECURITY.** This Note is subject to a Loan Agreement, and the security includes but is not limited to: Real Estate by Real Estate Mortgages dated 11/28/2001, 09/10/2003, 06/16/2004 and 11/05/2008 to be filed at closing, and the security or additional security described in the Loan Agreement, as all or any of these may be renewed or amended from time to time. All liens shall continue in effect until the Indebtedness is paid in full, despite any interim period of no Indebtedness outstanding, and until this Note and the security documents are terminated.

6.   **EVIDENCE OF INDEBTEDNESS.** Advances, interest and other charges, and repayments shall be posted to Lender's accounting record, which record shall be evidence of the Indebtedness owing hereunder and under any Account(s) from time to time, and which record shall be admitted into evidence in any dispute involving this Note as prima facie evidence of the amount of the Indebtedness or any individual Account Indebtedness. Each statement of account sent to Borrower shall constitute an account stated, and shall be deemed accepted by and binding upon Borrower unless specific written objection thereto is received by Lender within 30 days after the date thereof. All payments and credits shall be applied to the Indebtedness in such reasonable manner as Lender in its sole discretion shall elect.

7.   **DEFAULT.** It is expressly agreed that the whole of the Indebtedness shall become immediately due and payable, at Lender's sole option, together with collection costs if any of the following "**Events of Default**" should occur: a.) The Indebtedness, or any installment or other amount due under any Account described herein or under any Loan Document remains unpaid for 30 days after the due date thereof, including all extensions, renewals and reamortizations; or b.) Borrower's or any Guarantor's failure to perform timely or observe any term or provision of this Note or any other Loan Document securing or otherwise related hereto; or c.) The breach of any warranty, representation, covenant or agreement in any Loan Document, or any material misrepresentation made to Lender under any Loan Document, financial statement or loan application related hereto; or d.) Lender declares Borrower or any Guarantor in Default on any Loan Document securing or otherwise related hereto; or e.) Lender declares a default on any other obligation of Borrower or any Guarantor to Lender or in which Lender has an interest.

8.   **COLLECTION COSTS AND FEES.** Borrower jointly and severally agrees to pay all costs, charges and expenses, including reasonable attorneys fees, which are incurred by Lender in connection with preserving or protecting Lender's rights and interests under this Note, any Mortgage, Security Agreement, Loan Agreement, Guaranty or other legal document related to or affecting this Note or the Indebtedness (all collectively called "**Loan Documents**") whether or not a legal action is filed; or incurred by Lender in the event of suit on the Loan Documents; or incurred in other legal proceedings for the collection of the Indebtedness secured hereby; or incurred in any foreclosure brought by Lender; or incurred in any other legal proceeding to protect or sustain any mortgage or lien granted as security for the Indebtedness; or incurred in any litigation or controversy, including any action in Bankruptcy Court, affecting, arising from or connected with the Loan Documents or Indebtedness. Such amounts, at Lender's sole discretion, shall be added to the unpaid principal balance of any Account or subaccount of any Account described herein or, if not already an active Account type, at Lender's Variable Rate as described in the Note section entitled LENDER'S VARIABLE INTEREST RATE and shall bear interest pursuant to the terms of such Account(s) from the date advanced, notwithstanding the maximum amount of Indebtedness described in any Loan Document; shall be evidenced by this Note and secured by all loan collateral documents; and shall be a lien of the same priority on all loan collateral.

# INSTALLMENT PROMISSORY NOTE

Filing Ref. :    **Liza Price-Rappaport**

Printed: 11/03/2008

9.  **ADDITIONAL TERMS.** Borrower hereby jointly and severally: a) agrees to pay the Indebtedness evidenced hereby without set-off, deduction, defense or counterclaim; and b) waives presentment, demand, protest, notice of protest and dishonor; and c) guaranties payment of this Note when due and consents without notice to the release of security and/or of other obligors and to any change in terms or extensions of time for payment for any period regardless of the original terms of this Note; and d) agrees not to assert against any holder of this Note any defenses or rights of set-off which any of the Borrowers or any endorser may have against the payee hereof; and e) agrees to provide, in a form acceptable to Lender, a current balance sheet and income statement at such times as Lender may request in connection with loans; and f) agrees to deliver such additional security as Lender may at any time deem necessary; and g) agrees that the terms of the Loan Documents shall bind and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto, and h) agrees to execute, deliver, file and record such documents or instruments, or take such other actions, as may be reasonably required by Lender to effectuate the intention of this transaction, or to assure the enforceability and collectability of the Indebtedness or any Loan Document or lien, or to otherwise protect or enforce the rights of Lender thereunder.

10. **NON-WAIVER.** Lender's waiver of Borrower's breach, or Lender's failure to exercise any right, or Lender's granting of forbearance, restructuring or "borrower rights" (under the Farm Credit Act or other applicable law or regulations) shall not be deemed a waiver of any subsequent breach of the same covenant or the breach of any other covenant, or of Lender's rights thereafter to exercise any right.  Any provision of the Loan Documents may be waived only by a writing, signed by an authorized representative of Lender.  This Note may be assumed only with prior written permission of the Lender.

11. **RELEASES.**  Lender may, at its sole option and without notice, release any part of the security described in the Loan Documents, or release any person or entity liable for or guaranteeing the Indebtedness, or agree to extend time for payment of the Indebtedness, or provide "borrower rights" under the Farm Credit Act without in any way affecting the lien thereof (except to the extent released) or without releasing any unreleased person or entity obligated to pay or guaranty the Indebtedness.

12. **AGENCY.**  Each of the undersigned hereby appoints each of the other undersigned as his, her or its agent for purposes of the within obligations until written notice of termination of such agency is actually received by Lender.

**NOT A CONSUMER TRANSACTION.**  Borrower acknowledges and agrees that this is not a consumer transaction.

**THIS NOTE IS SUBJECT TO THE TERMS ON THE PREVIOUS PAGE(S) AND, WHEN APPLICABLE, THE TERMS ON ANY ATTACHMENTS OR RIDERS, ALL OF WHICH THE UNDERSIGNED HAVE READ PRIOR TO SIGNING.**

Serendipity Farm, L.L.C.

By: _____  11-05-08  _____
Liza Price-Rappaport, Member                    Liza Price-Rappaport, Individual


Signed and Sealed in the Presence of:

_____

WITNESS To All    Richard Schatzman

# INSTALLMENT PROMISSORY NOTE

Filing Ref. :    **Liza Price-Rappaport**

Printed: 10/21/2010

Date:    **October 21, 2010**

| Association: | **Farm Credit East, ACA** |
|---|---|
| Branch: | **Lebanon, NJ  028-012** |
| Note #: | **7089465** |
| Customer #: | **0000174664** |

1. **INDEBTEDNESS.** For value received, the undersigned (collectively: "**Borrower**") jointly and severally promise to pay to the order of **Farm Credit East, ACA**, or the Holder of this Note (collectively: "**Lender**") the principal sum of **Three Hundred Fifty Thousand Dollars and Zero Cents ($350,000.00)** together with interest per annum as set forth herein, all future advances and all other sums due to Lender under the Loan Documents, as defined herein (collectively "**Indebtedness**").

2. **LOAN ACCOUNT(S).** The outstanding principal balance of the Indebtedness evidenced hereby is represented by the following loan account(s) ("**Account**" or "**Account(s)**") and interest shall accrue on the Account(s) in the manner so described. Indebtedness evidenced by any single Account is "**Account Indebtedness.**" At Lender's option, a change in interest rate or an optional future advance under the Account(s) may increase or decrease one or more of the following: the amount of each Installment due, the amount of the final Installment or the total number of Installments due.

   **A.    Account Number:**                                **Description and Rate Type:**

   Account # 7089465-101          **Lender's Variable Interest Rate Account**
                                  **Account Billing Title:  Mortgage**
                                  **Non-Revolving Loan**

   **Repayment.** The principal sum of **$350,000.00**, including any amount thereof which is not paid when due and all future advances to this Account, shall bear interest from the date incurred or advanced at the Lender's variable interest rate (hereinafter, "**Lender's Variable Rate**") as described herein and in the section of this Note entitled LENDER'S VARIABLE INTEREST RATE. Repayment shall be made in "Installments" as described herein.

   **Interest Rate.** Lender's Variable Rate applicable to this Account on the date hereof is **4.25%** per year. Interest shall accrue to the date of receipt of payment. If the Indebtedness shall become due because of a default under this Note or for any other reason, then in addition to Lender's rights under the DEFAULT section of this Note, interest for this Account shall continue under the provisions of LENDER'S VARIABLE INTEREST RATE program until all Account Indebtedness is paid in full.

   **Prepayment.** A payment, in any amount, made in advance of the scheduled payment date is a "**prepayment**". Borrower may make a prepayment of this Account, in whole or in part, at any time without a prepayment charge.

   **Installments.** Installments shall be made as follows:

   **Two Hundred Thirty-Nine (239) Monthly** installments of principal and interest, in the amount of **$2,170.52,** beginning on December 1, 2010, plus a final installment of any amount necessary to pay the Indebtedness in full on November 1, 2030.

3. **FUTURE ADVANCES.** This Note is also given for optional future advances on all or any of the Account(s) described herein up to an **unlimited amount** of Indebtedness, which may be made or arise from time to time;

## INSTALLMENT PROMISSORY NOTE

Filing Ref. :   **Liza Price-Rappaport**                         Printed: 10/21/2010

but Lender is not obligated to make future advances. No future advance needs to be made or completed if a default has occurred hereunder, or if Borrower is in default on any Loan Document or on any other loan, obligation or Agreement with Lender or in which Lender has an interest. All future advances made hereunder shall be added to the unpaid principal balance of the associated Account hereof, and shall bear interest, as provided pursuant to the terms of such Account, at the rate applicable thereto from the date of such advance. Any advance made by Lender for taxes, liens, judgments, assessments, insurance premiums, environmental compliance or to protect collateral pursuant to any Loan Document, shall be payable on demand or, at Lender's sole option, such amount may be added to the unpaid principal balance of any Account or subaccount of any Account described herein or, if not already an active Account type, at Lender's Variable Rate as described in the Note section entitled LENDER'S VARIABLE INTEREST RATE and shall bear interest pursuant to the terms of such Account from the date of such advance.

4. **LENDER'S VARIABLE INTEREST RATE.** The **"Lenders Variable Rate"** (as hereinafter described) is a variable rate that corresponds to the applicable Interest Rate Tier, both of which shall be determined by Lender. The Interest Rate Tier assigned to Borrower may be changed at any time, pursuant to Lender's credit criteria for that Tier, which change in Tier may result in a change of the Variable Interest Rate applicable hereto. The Variable Interest Rate applicable to any Tier also may be increased or decreased at any time pursuant to Lender's Interest Rate Policy applicable to this Note and pursuant to the Farm Credit Act of 1971, as such policy or law may hereafter be amended. Such Rate is determined from time to time as a means of pricing loans to Lender's customers, including Borrower, and is neither tied to any external rate or index, nor does it necessarily reflect the lowest rate actually charged to any particular category of customers.

In adjusting Lender's Variable Rate, Lender considers certain standard factors set forth under Lender's Interest Rate Policy, including but not limited to, changes in its cost of funds, operating expenses, earnings requirements to meet certain capital objectives, credit risk factors, and the competitive environment, which factors may change during the term of the loan.

Borrower understands and agrees that (a) the Interest Rate Tier to which this loan is assigned may be changed at any time to any other Interest Rate Tier based on Lender's evaluation of a change in Borrower's credit quality, quality of collateral, costs of servicing the loan, and other factors which are set forth in Lenders Interest Rate Policy in effect at that time; and (b) the Interest Rate Tier may be automatically adjusted to the highest Interest Rate Tier if a default occurs under this Note or under any other Note or agreement between Borrower and Lender.

Lender's Variable Interest Rate shall not be limited by any State's usury or other legal interest rate limit. If Lender changes Lender's Variable Rate for one or more applicable Accounts, Lender will give Borrower notice of the change in rate as required by the then applicable law.

5. **SECURITY.** This Note is subject to a Loan Agreement, and the Note security includes but is not limited to: Real Estate by a Real Estate Mortgage dated, November 28, 2001, and Real Estate by a Real Estate Mortgage dated, September 10, 2003, and the security or additional security described in the Loan Agreement, as all or any of these may be renewed or amended from time to time. All liens shall continue in effect until the Indebtedness is paid in full, despite any interim period of no Indebtedness outstanding, and until this Note and the security documents are terminated by Lender. At Lender's request, Borrower shall execute a substitute negotiable demand promissory note for the full unpaid balance of this Note.

6. **EVIDENCE OF INDEBTEDNESS.** Advances, interest and other charges, and repayments shall be posted to Lender's accounting record, which record shall be evidence of the Indebtedness owing hereunder and under any Account(s) from time to time, and which record shall be admitted into evidence in any dispute involving this Note as prima facie evidence of the amount of the Indebtedness or any individual Account Indebtedness. Each statement of account sent to Borrower shall constitute an account stated, and shall be deemed accepted by and

# INSTALLMENT PROMISSORY NOTE

Filing Ref. :    **Liza Price-Rappaport**                                    Printed: 10/21/2010

binding upon Borrower unless specific written objection thereto is received by Lender within 30 days after the date thereof. All payments and credits shall be applied to the Indebtedness in such reasonable manner as Lender in its sole discretion shall elect.

7.  **DEFAULT.** It is expressly agreed that the whole of the Indebtedness shall become immediately due and payable, at Lender's sole option, together with collection costs if any of the following "**Events of Default**" (also called a **"default"**) should occur: a.) The Indebtedness, or any Installment or other amount due under any Account described herein or under any Loan Document remains unpaid for 30 days after the due date thereof, including all extensions, renewals and reamortizations; or b.) Borrower's or any Guarantor's failure to perform timely or observe any term or provision of this Note or any other Loan Document securing or otherwise related hereto; or c.) The breach of any warranty, representation, covenant or agreement in any Loan Document, or any material misrepresentation made to Lender under any Loan Document, financial statement or loan application related hereto; or d.) Lender declares Borrower or any Guarantor in default on any Loan Document securing or otherwise related hereto; or e.) Lender declares a default on any other obligation of Borrower or any Guarantor to Lender or in which Lender has an interest.

8.  **COLLECTION COSTS AND FEES.** Borrower jointly and severally agrees to pay all costs, charges and expenses, including reasonable attorneys fees, which are incurred by Lender in connection with preserving or protecting Lender's rights and interests under this Note, any Mortgage, Security Agreement, Loan Agreement, Guaranty or other legal document related to or affecting this Note or the Indebtedness (all collectively called "**Loan Documents**") whether or not a legal action is filed; or incurred by Lender in the event of suit on the Loan Documents; or incurred in other legal proceedings for the collection of the Indebtedness secured hereby; or incurred in any foreclosure brought by Lender; or incurred in any other legal proceeding to protect or sustain any mortgage or lien granted as security for the Indebtedness; or incurred in any litigation or controversy, including any action in Bankruptcy Court, affecting, arising from or connected with the Loan Documents or Indebtedness. Such amounts, at Lender's sole discretion, shall be added to the unpaid principal balance of any Account or subaccount of any Account described herein or, if not already an active Account type, at Lender's Variable Rate as described in the Note section entitled LENDER'S VARIABLE INTEREST RATE and shall bear interest pursuant to the terms of such Account(s) from the date advanced, notwithstanding the maximum amount of Indebtedness described in any Loan Document; shall be evidenced by this Note and secured by all loan collateral documents; and shall be a lien of the same priority on all loan collateral.

9.  **ADDITIONAL TERMS.** Borrower hereby jointly and severally: a) agrees to pay the Indebtedness evidenced hereby without set-off, deduction, defense or counterclaim; and b) waives presentment, demand, protest, notice of protest and dishonor; and c) guaranties payment of this Note when due and consents without notice to the release of security and/or of other obligors and to any change in terms or extensions of time for payment for any period regardless of the original terms of this Note; and d) agrees not to assert against any holder of this Note any defenses or rights of set-off which any of the Borrowers or any endorser may have against the payee hereof; and e) agrees to provide, in a form acceptable to Lender, a current balance sheet and income statement at such times as Lender may request in connection with loans; and f) agrees to deliver such additional security as Lender may at any time deem necessary; and g) warrants and agrees that each Borrower has the authority, power and capacity to enter into this loan and to execute all Loan Documents in connection herewith, and that this Note and all Loan Documents, when executed, shall be valid and legally binding upon all Borrowers; and h) agrees that the terms of the Loan Documents shall bind and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto, and i) agrees to execute, deliver, file and or record such documents or instruments, or take such other actions, as may be reasonably required by Lender to effectuate the intention of this transaction, or to assure the enforceability and collectability of the Indebtedness or any Loan Document or lien, or to otherwise protect or enforce the rights of Lender thereunder.

10.  **NON-WAIVER.** Lender's waiver of Borrower's breach, or Lender's failure to exercise any right, or Lender's granting of forbearance, restructuring or "borrower rights" (under the Farm Credit Act or other applicable law or

Installment Note
11327    07/09

Page: 4 of 4

# INSTALLMENT PROMISSORY NOTE

Filing Ref. :    **Liza Price-Rappaport**                              Printed: 10/21/2010

regulations) shall not be deemed a waiver of any subsequent breach of the same covenant or the breach of any other covenant, or of Lender's rights thereafter to exercise any right. Any provision of the Loan Documents may be waived only by a writing, signed by an authorized representative of Lender. This Note may be assumed only with prior written permission of the Lender.

11. **RELEASES.** Lender may, at its sole option and without notice, release any part of the security described in the Loan Documents, or release any person or entity liable for or guaranteeing the Indebtedness, or agree to extend time for payment of the Indebtedness, or provide "borrower rights" under the Farm Credit Act without in any way affecting the lien thereof (except to the extent released) or without releasing any unreleased person or entity obligated to pay or guaranty the Indebtedness.

12. **AGENCY.** Each of the undersigned hereby appoints each of the other undersigned as his, her or its agent for purposes of the within obligations until written notice of termination of such agency is actually received by Lender.

**NOT A CONSUMER TRANSACTION.** Borrower acknowledges and agrees that this is not a consumer transaction.

**THIS NOTE IS SUBJECT TO THE TERMS ON THE PREVIOUS PAGE(S) AND, WHEN APPLICABLE, THE TERMS ON ANY ATTACHMENTS OR RIDERS, ALL OF WHICH THE UNDERSIGNED HAVE READ PRIOR TO SIGNING.**

Accepted and agreed to by each of the undersigned as of the date first written above:

_____
Liza Price-Rappaport, Individual

Serendipity Farm, L.L.C.

_____
By: Liza Price-Rappaport, Member

Signed and Sealed in the Presence of:

_____
WITNESS

Price Rappaport, Liza
7031262.

NEW JERSEY   C.D. Real Estate Mortgage
11337  1/01

RECORD AND RETURN TO:
FIRST PIONEER FARM CRECIT, ACA
9 County Road 618
Lebanon, NJ  08833

LIZA PRICE RAPPAPORT, Unmarried,

TO

FIRST PIONEER FARM CREDIT, ACA

Recording Data

20081105000258490   1/10
11/05/2008 02:11:16 PM  M
Bk: 3298 Pg: 155
Mary H. Melfi
Hunterdon County Clerk

## LINE OF CREDIT MORTGAGE

**THIS MORTGAGE, is** made this 5th day of November, 2008 between Liza Price Rappaport of 309 Wertsville Road, Ringoes, NJ 08551 ("**Borrower**") and FIRST PIONEER FARM CREDIT, ACA, a corporation organized and existing under the laws of the United States under the Farm Credit Act of 1971, as amended, having its principal office and place of business at 9 County Road 618, Lebanon, County of Hunterdon, State of New Jersey ("**Lender**").

**1. MAXIMUM AMOUNT SECURED.** It is understood and agreed that the maximum amount to be secured at any one time outstanding by this Mortgage is the principal sum of EIGHT HUNDRED THOUSAND and 00/100 DOLLARS ($800,000.00), plus all interest, and plus all: taxes, insurance premiums, costs of collection (including reasonable attorneys fees), liability for environmental non-compliance and other amounts paid pursuant to the terms of this Mortgage, or of any Note, Loan Document or other obligation secured hereby, or amounts otherwise paid or incurred by Lender to preserve the mortgage lien. This Mortgage is subject to a Loan Agreement and all amendments thereto and renewals thereof.

The Parties to this Mortgage may agree to change the interest rate, due date, or other terms of this Mortgage or of the Indebtedness secured hereby. If the Parties agree to a change, which change is a "modification" as defined in P.L. 1985, c. 353, this Mortgage shall be subject to the priority provisions of that law.

Advances made pursuant to the terms of the Indebtedness secured by this Mortgage shall be "modifications" as defined in P.L. 1985, c 353, and the priority of this Mortgage shall be subject to that law.

**2. PAYMENT OF INDEBTEDNESS.** Borrower hereby agrees and binds himself jointly and severally to pay Lender, its successors or assigns, or the Holder of this Mortgage, all of the Indebtedness secured hereby, without any deduction or credit, together with interest thereon, and default interest on all amounts not paid when due, according to a certain Note(s) of even date herewith or according to certain other Note(s) or other obligations which may be given from time to time by Borrower to Lender and secured hereby, the terms of which are incorporated by reference and made a part hereof.

**3. OBLIGATIONS SECURED.** This Mortgage is given as continuing security for the payment of the aforesaid Note(s) and other obligations; and also as continuing additional security for the performance of all other covenants and agreements between Borrower and Lender and Borrower and any of Lender's wholly owned subsidiaries; and for the payment and performance of all other claims, charges, debts, agreements, liabilities, obligations and indebtedness of Borrower to Lender and to any of Lender's wholly owned subsidiaries (all collectively referred to as "**Indebtedness**"), whether now existing or arising hereafter, and whether arising out of this present financial transaction or transactions separate and unrelated hereto, and whether such Indebtedness is absolute, contingent, direct or indirect, and whether made as maker, endorser, guarantor or otherwise; and whether incurred by future advances (both obligatory and non- obligatory) or otherwise. Reference to this Mortgage as security for any Indebtedness shall not be required to be stated on the face of any document representing such Indebtedness or elsewhere. If such Indebtedness shall remain or become that of less than all of the Borrowers, any Borrower not liable therefor hereby expressly hypothecates his/her/their ownership in the Mortgaged Premises to the extent required to satisfy the Indebtedness without restriction or limitation unless such Borrower has been discharged in writing by Lender.

**4. DESCRIPTION OF MORTGAGED PREMISES.** To secure the payment of said Indebtedness, Borrower hereby mortgages the following described real estate located in the Township of Delaware, County of Hunterdon and State of New Jersey, designated as Block 18, Lot 24.01 and 24.01Q0289, and also being all and the same premises as described in Exhibit "A", attached hereto and made a part hereof, which, together with the rights described in the following paragraphs, shall be collectively referred to herein as the "**Mortgaged Premises**".

**TOGETHER WITH** all and singular, the profits privileges and advantages, with the appurtenances to the same belonging or in any wise appertaining; and also, all the estate, right, title interest, property claim and demand whatsoever, of Borrower, of, in , and to the

**PAGE 1 OF 5**

 LandAmerica

File No. C516571

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Delaware, County of Hunterdon, State of New Jersey, and being more particularly described as follows:

BEGINNING at a point in the easterly right of way of Upper Creek Road, 25.00 feet from centerline, said point being where same is intersected by the common line dividing Lots 24.01 and 24.04 in Block 18, said point of beginning having New Jersey State Plane Coordinate (NAD 83) values of N=593666.222, E=358664.555, and from said point of beginning; running

(1)     Along the southerly line of said Lot 24.04, North 83° 39' 26" East, passing over a concrete monument found 15.00 feet from the beginning of this course, a distance of 1208.02 feet to a capped iron found and corner to Lot 24.04; thence

(2)     Along Lots 24.04 and 24.05, South 11° 26' 39" East, a distance of 912.99 feet to a capped iron found and corner to Lot 24.05; thence

(3)     Along the northerly line of Lot 24.05, South 71° 25' 00" West, a distance of 1139.38 feet passing over a concrete monument found 15.00 feet from the terminus of this course to a point in the easterly right of way line of Upper Creek Road, 25.00 feet from centerline; thence

(4)     Along said right of way line the following three courses, North 22° 24' 58" West, a distance of 88.59 feet to a point; thence

(5)     North 22° 47' 28" West, a distance of 133.36 feet to a point; thence

(6)     North 22° 47' 04" West, a distance of 3.77 feet to a point; thence

(7)     Through Upper Creek Road, South 67° 12' 56" West, a distance of 25.00 feet to a point in the centerline of Upper Creek Road; thence the following ten courses along the centerline of Upper Creek Road

(8)     North 22° 47' 04" West, a distance of 116.44 feet to a point; thence

(9)     North 23° 04' 01" West, a distance of 85.53 feet to a point; thence

(10)    North 21° 29' 14" West, a distance of 38.22 feet to a point; thence

(11)    North 18° 58' 17" West, a distance of 46.26 feet to a point; thence

(12)    North 16° 24' 09" West, a distance of 46.36 feet to a point; thence

(13)    North 10° 33' 41" West, a distance of 69.00 feet to a point; thence

(14)    North 11° 01' 18" West, a distance of 157.59 feet to a point; thence

(15)    North 10° 25' 28" West, a distance of 96.63 feet to a point; thence

(16)    North 07° 57' 38" West, a distance of 114.55 feet to a point; thence

(17)    North 06° 01' 32" West, a distance of 57.78 feet to a point; thence

 LandAmerica

SCHEDULE A – LEGAL DESCRIPTION
*(Continued)*

File No. C516571

(18)     Crossing Upper Creek Road, North 83° 58' 28" East, a distance of 25.00 feet to a point in the easterly right of way line of Upper Creek Road, 25.00 feet from centerline; thence

(19)     Along the easterly right of way line of Upper Creek Road, 25.00 feet from the centerline, North 06° 01' 32" West, a distance of 70.08 feet to a point; thence

(20)     Along same, North 06° 37' 55" West, a distance of 55.59 feet to the point and place of Beginning.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 24.01 & 24.01(Q0289) in Block 18 on the Township of Delaware Tax Map.

.        Being the same lands and premises conveyed to the said Liza Price Rappaport by
Christopher N. Knight, Executor under the Last Will and Testament of Grace N. Knight,
deceased, by deed dated October 30, 2008 and delivered and about to be recorded
simultaneously herewith.

This is a purchase money mortgage given with all the rights and privileges of
such.

Subject to possible effect of utility easement to N. J. Power & Light Co. dated
November 15, 1939 and recorded in Deed Book 422 at page 36.

Subject to possible effect of utility easement to N. J. Power & Light Co. dated
November 16, 1939 and recorded in Deed Book 422 at page 182.

Subject to possible effect of utility easement to N. J. Power & Light Co. dated
October 23, 1945 and recorded in Deed Book 453 at page 92.

Subject to possible effect of utility easement to New Jersey Power & Light
Company dated June 13, 1963 and recorded in Deed Book 655 at page 537.

Subject to and together with access rights as recited in Deed dated August 30,
1985 and recorded in Deed Book 939 at page 222; Deed dated August 30, 1985 and
recorded in Deed Book 939 at page 225; Deed dated August 30, 1985 and recorded in
Deed Book 939 at page 230; Deed dated December 12, 1988 and recorded in Deed Book
1018 at page 861; Deed dated October 31, 1989 and recorded in Deed Book 1034 at page
420;  Deed dated November 29, 1989 and recorded in Deed Book 1035 at page 690.

Subject to sight easements and road dedication to Township of Delaware dated
August 30, 1985 and recorded in Deed Book 939 at page 222.

Subject to the rights of the public in and to Upper Creek Road.

Subject to deed of conservation easement to Delaware & Raritan Greenway, Inc.
dated December 31, 2002 and recorded in Deed Book 2060 at page 306.

Subject to matters shown on survey of subject premises by Charles E. Saladin, Jr.,
dated January 20, 2004.

same, and every part or parcel thereof; TO H̄ E AND TO HOLD all and singular the abov scribed tract or parcel of land with the appurtenances unto the said Lender to its u....l proper use, benefit and behoof forever.

**PROVIDED NEVERTHELESS,** and these presents are upon the express condition that, if Borrower shall pay or cause to be paid to Lender the Indebtedness hereunder, despite any interim period during which no Indebtedness is outstanding; and if Borrower shall comply with all of the covenants hereunder; and if all Notes or other evidence of the Indebtedness are terminated and this Mortgage is discharged; then these presents shall be void. Otherwise this Mortgage shall remain in full force and effect.

**5. LIEN INCLUDES ALL RIGHTS IN THE PROPERTY.** The lien granted by this Mortgage shall include all right, title and interest of Borrower in and to the Mortgaged Premises, including without limitation: all buildings, structures and improvements and all replacements and after acquired property of the same kind; all easements; all riparian and other rights running with the land; all fixtures now existing or hereafter attached to the property; the beds of all streets and roads in front of and adjoining said real estate to the center line thereof; all oil, gas, mineral, timber, water, sand, gravel, natural resources and other such rights; all awards for taking by condemnation or eminent domain of all or any portion of the Mortgaged Premises or any easement thereon, including awards for change of grade of streets; all insurance proceeds and unclaimed premiums payable under policies covering the Mortgaged Premises; and all leases affecting the Mortgaged Premises, which leases and all rents, royalties, income and other payments and rights thereunder are hereby assigned to Lender during the term hereof, and the possession of such leases and proceeds therefrom shall be delivered to Lender upon its demand.

It is agreed that this Mortgage shall be considered a financing statement pursuant to the Uniform Commercial Code covering all the Borrowers' personal property described herein.

**BORROWER'S COVENANTS**
Borrower covenants with Lender as follows:

**6. DEFAULT.** If one or more of the following **"Events of Default"** should occur, Lender shall have such rights and remedies as are provided in the Note(s) and Loan Documents, including without limitation and at Lender's sole option, the right to make demand or to accelerate the whole Indebtedness secured hereby. No advance needs to be made or completed if one or more of the following Events of Default should occur:

a.) A default for more than 30 days in the payment of:

    (i) amounts demanded, or any installment of principal or of interest due, or any accelerated amount due under the Note(s) or other evidence of the Indebtedness, or under any obligation secured hereby, or under the terms of this Mortgage or any other instrument securing the Indebtedness; or

    (ii) any tax, water rate or assessment; or

    (iii) any amount not paid when due under any Loan Document; or

b.) The failure of Borrower or any guarantor to observe, perform timely or comply with any provisions contained in the Note(s) or other evidence of the Indebtedness, in this Mortgage or any other instrument securing the Indebtedness, or in any Loan Agreement, Security Agreement, Guaranty or in any other legal document of any kind related to or subject hereto, or in any other obligations secured hereby (collectively called: **"Loan Documents"** ), or in any other obligations of Borrower or any guarantor to Lender or in which Lender has an interest; or

c.) A breach of any warranty, representation, covenant or agreement contained herein or contained in the Loan Documents, or in any other obligations of Borrower or any guarantor to Lender or in which Lender has an interest; or any material misrepresentation relating thereto or contained therein or in any loan application or financial statement submitted to Lender; or

d.) Failure to pay within 30 days of demand, or a declared default existing for more than 30 days, on any other note(s), mortgages or other obligations of Borrower or any guarantor to Lender or in which Lender has an interest; or

e.) Declared default existing for more than 30 days on a mortgage or security agreement to any third party covering the Mortgaged Premises or personal property collateral; or

f.) Failure to discharge within 60 days of entry, or of affirmation on appeal, any final judgement for the payment of money against Borrower or any guarantor; or

g.) Borrower becomes insolvent or dissolves (if a legal entity); Borrower or any guarantor files or has filed against him any petition in Bankruptcy, or any equivalent action for relief in Bankruptcy Court, or enters into an assignment for the benefit of creditors or similar arrangement; or Borrower or any guarantor is subject to a court order appointing a receiver or trustee on his behalf.

**7. USE OF LOAN PROCEEDS AND CO'  ,TERAL.** Borrower covenants and agrees th    ,e proceeds of loans secured hereby shall be used only for the purposes set forth ... the application therefor or specified by Lende,, that the Mortgaged Premises herein described shall be maintained in a good and husbandlike manner, including the use of prudent and appropriate agricultural practices and soil conservation techniques; that the buildings, improvements and fixtures on Mortgaged Premises shall be kept in good repair; that any natural resources, including timber, topsoil, oil, gas, or water shall not be sold, leased or otherwise exploited without the prior written consent of Lender; that landfill operations, the spreading of sludge, sludge-derived products or other waste, or the deposit of hazardous or toxic substances, materials or waste, other than materials ordinarily used for agricultural purposes and used in accord with applicable laws, shall not be permitted without the prior written consent of Lender. In addition, Borrower shall not commit nor suffer the commission of waste of Mortgaged Premises. Borrower hereby grants to Lender, for as long as this Mortgage remains in effect, the irrevocable right to enter the Mortgaged Premises at reasonable times to conduct inspections, environmental audits or take such other actions as Lender, in its sole discretion and without any obligation to do so, may reasonably require to ascertain, to verify or to monitor the Mortgaged Premises' condition and Borrower's compliance with all applicable laws, rules and regulations and with the Covenants of this Mortgage. Unless otherwise agreed in writing, all costs of any environmental audits and inspections shall be borne by Borrower.

**8. TITLE WARRANTY.** Borrower warrants that Borrower is lawfully seized of an indefeasible estate in fee simple in the Mortgaged Premises, and shall warrant and forever defend the title thereof unto Lender against all lawful claims whatsoever.

**9. ADVANCES.** Borrower shall receive and hold any advances secured hereby made for erecting an improvement on the Mortgaged Premises, and the right to receive such advances, as a trust fund to be applied first for the purpose of paying the cost of the contemplated improvement, and Borrower shall apply such advance(s) to payment of same before using any part for any other purpose.

**10. BUILDINGS.** No building, structure or improvement on the Mortgaged Premises shall be removed, demolished, or substantially changed without the prior written consent of Lender.

**11. NO SALE OR LEASE.** Borrower covenants and agrees that, after the date hereof, none of the following actions shall be taken or permitted without Lender's prior written consent:

a.) Acquisition of legal or equitable title to all or any part of the Mortgaged Premises by anyone other than those in whom title is vested on the date hereof; or

b.) All or any part of the Mortgaged Premises becoming subject to either a lease for a term exceeding one year or an installment sales contract, whether or not title passes; or

c.) Any principal, stockholder or partner of the undersigned legal entity or an entity guaranteeing the Indebtedness selling or otherwise transferring his/her ownership, stock or partnership interest in such entity.

**12. ENVIRONMENTAL REQUIREMENTS.** Borrower shall comply strictly with the requirements of all applicable federal, state and local environmental laws, rules and regulations and shall not become involved in operations on the Mortgaged Premises or other locations which could lead to Borrower's or Lender's liability thereunder. If Borrower fails to so comply, Lender, at its sole option but without any obligation to do so, may give such notices, incur such expense, take such actions or cause such work to be performed on the Mortgaged Premises or take any and all other actions as Lender deems necessary or prudent to cure such failure of compliance. Any amounts paid as a result thereof, together with interest thereon according to the terms of the Note(s) or obligations secured hereby, shall be due and payable from Borrower to Lender on demand, and until paid shall become a part of the Indebtedness secured hereby with the same lien priority, notwithstanding any limitation of Indebtedness otherwise provided for herein, and the same may be collected as part of the principal debt in any suit hereon or upon the Note(s) or other obligations secured hereby.

Borrower does hereby jointly and severally agree to indemnify, defend and hold Lender harmless of and from any and all: liabilities, liens, assessments, suits, damages, judgments, costs and expenses, environmental audit fees and costs, attorney fees, consultant's fees, clean up costs, removal or response costs arising out of the presence, handling and disposal of hazardous or toxic waste, materials or substances of any kind whatsoever in connection with the Mortgaged Premises, including without limitation the assertion of any lien taking priority over the lien hereof, or arising out of any requirement of ECRA, the Spill Act or any other applicable law or regulation.

Borrower represents and warrants to Lender that:

a.) To the best of Borrower's knowledge: the Mortgaged Premises are in compliance with all applicable environmental laws, rules and regulations; no part of the Mortgaged Premises or other real property owned or occupied by Borrower in the State of New Jersey has been used or is now used as a "Major Facility", as defined in N.J.S.A. 58:10-23.11(b)1 and shall not be used as such in the future; and Borrower shall not suffer or permit the Mortgaged Premises to be used in a manner so as to be considered an "Industrial Establishment" as such term is defined in the ECRA law and regulations. If ECRA becomes applicable to the Mortgaged Premises (which, at

Lender's sole option shall be an Event of default hereunder), Borrower shall comply with CRA and shall cause all tenants to comply with ECRA. Borrower shall notify Lender of any termination of any lease or the closing of any operations and shall provide evidence of compliance by tenants with the provisions of ECRA if such lease termination or closing of operations occurs.

b.) To the best of Borrower's knowledge, Borrower has made full disclosure to Lender of: all now known or reasonably suspected environmental problems or conditions on or adjacent to the Mortgaged Premises, and all environmental orders or agreements with federal, state and local authorities affecting Borrower or the Mortgaged Premises.

c.) If environmental contamination or non-compliance with applicable laws affecting Borrower or the Mortgaged Premises is discovered during the term of this Mortgage, Borrower shall:

(i) immediately notify Lender of the same;

(ii) promptly undertake at Borrower's own expense any remedial action, removal or compliance measures required;

(iii) promptly reimburse Lender for all sums Lender expends under this Environmental Requirements section or becomes liable to expend under applicable laws, rules and regulations.

Borrower acknowledges and agrees that any determination by Lender of compliance with environmental laws is made solely for Lender's own benefit. Such determination(s) shall not be disclosed to third parties or relied upon by Borrower or any third party.

All provisions of this Environmental Requirements section, including but not limited to indemnification, shall survive the discharge or other cancellation of this Mortgage and the Indebtedness.

**13. INSURANCE.** Using insurers acceptable to Lender, Borrower shall keep the Mortgaged Premises insured against loss by fire, with extended coverage endorsement, and such other hazards (and in such amounts) as Lender may require, for the benefit of Lender, and naming Lender as the Insured. Borrower shall also, on Lender's demand furnish evidence of coverage to Lender and assign and deliver such policies to Lender. In the event of foreclosure of this Mortgage, Lender shall succeed to all the rights of Borrower in and to all policies required hereunder. If required by Lender, Federal Flood Insurance (if property qualifies), public liability insurance, workman's compensation insurance and other specified kinds of insurance shall be carried by Borrower. Terms of any insurance policy required hereunder shall provide for at least 30 days prior written notice of cancellation to Lender. Lender shall be entitled to receive all insurance proceeds and, at its sole option, to apply such proceeds to the Indebtedness of to reimburse Borrower of the cost of the replacement or repair of the Mortgaged Premises.

Lender shall not be liable to Borrower if insurance lapses; and Lender shall have no duty to notify Borrower of such lapse of insurance coverage. Lender, without obligation to do so, may obtain insurance and pay any late or delinquent insurance premiums related to the Mortgaged Premises. In such event, Lender, at its sole option, may: a) Obtain from Borrower reimbursement for any such amounts paid plus interest under the applicable Note(s), which amount shall be payable by Borrower on Lender's demand; or b) Add such amount to the Indebtedness secured hereby with interest and according to the terms of the applicable Note(s), despite the aforesaid limit on the maximum amount secured hereby; or c) Declare Borrower in default hereunder, subject to Borrower's right to cure within 30 days after Lender's notice and demand. Upon demand from Lender, Borrower shall surrender immediately all insurance policies covering the mortgaged premises, which policies in the event of foreclosure shall become the property of Lender, with full authority in Lender to make claims, to settle, compromise or dispose of same at its sole discretion for application to the Indebtedness secured hereby.

**14. TAXES, LIENS, JUDGMENTS AND ASSESSMENTS.** Borrower shall pay when due all taxes, liens, judgments, assessments, water and sewer rents, charges for utilities and environmental clean up costs affecting the Mortgaged Premises or the lien hereof; and Borrower shall furnish evidence of payment of same on Lender's demand. If Borrower fails to pay the same, Lender, at its sole option, may: a) Pay the same and add such amount to the Indebtedness secured hereby with interest and according to the terms of the Note(s) secured hereby, despite the aforesaid limit on the maximum amount secured hereby; or b) Obtain from Borrower reimbursement of the amount paid plus interest under the applicable Note(s), which amount shall be payable by Borrower on Lender's demand; or c) Declare Borrower in default hereunder, subject to Borrower's right to cure within 30 days after Lender's notice and demand.

**15. SET-OFF.** Immediately upon Borrower's default and without notice to Borrower, Lender shall have the right to set-off and apply to the Indebtedness, in such manner as Lender in its sole discretion may determine, any and all sums credited by or due from Lender to Borrower, whether in transit or in the possession of Lender. Such sums shall at all times constitute additional security for the Indebtedness secured hereby.

**16. NON WAIVER.** Waiver by Lender of the breach of any terms or covenants, or the failure of Lender to exercise any option given to it, or the granting by Lender of any forbearance, restructuring or "borrower rights" (as may be required or allowed under the Farm Credit Act or other applicable law or regulations) shall not be deemed to be a waiver of any subsequent breach of the same covenant or the breach of any other covenant, or of Lender's rights thereafter to exercise any such option. Nothing herein, or in any Loan

Document shall limit or waive Lender's rig'   make demand under any demand obligatioı   ured hereby. Any provision of this Mortgage may be waived only by a writing, signed by an authorized representative of Lender.

**17. COLLECTION COSTS AND FEES.** Borrower jointly and severally agrees to pay all costs, charges and expenses, including reasonable attorneys fees, which are: incurred by Lender in connection with preserving or protecting Lender's rights and interests under the Note(s) or this Mortgage or any Loan Document whether or not a legal action is filed; or incurred by Lender in the event of suit on the Note(s) or this Mortgage or any Loan Document; or incurred in other legal proceedings for the collection of the Indebtedness secured hereby; or incurred in any foreclosure brought by Lender; or incurred in any other legal proceeding to protect or sustain any mortgage or lien granted as security for the debt secured hereby; or incurred in any litigation or controversy, including any action in Bankruptcy Court, affecting, arising from or connected with the said Note(s), Indebtedness, Loan Documents or this Mortgage. Such amounts together with interest shall be added to the unpaid principal balance hereof, notwithstanding the maximum amount of Indebtedness described above; shall be evidenced by the Note(s) and secured by this Mortgage; and shall be a lien of the same priority on the Mortgaged Premises.

Borrower further agrees to pay all reasonable fees, costs and expenses for all environmental audits or other environmental evaluations of the Mortgaged Premises, updates of environmental audits or evaluations, appraisals of the Mortgaged Premises, appraisal updates or other valuation services or professional opinions which may be required by Lender, in its sole discretion, from time to time in connection with this loan or the collection of the Indebtedness. All sums owing for such services shall be payable on Lender's demand. If unpaid for thirty (30) days after demand, such unpaid sum, at Lender's sole discretion, may either constitute a default on this Mortgage, or it may be added to the unpaid principal balance of the loan and secured by this Mortgage as a lien of the same priority.

**18. SALE OF COLLATERAL.** All Lender's rights to personal property security and real property security, in Lender's sole discretion, may be exercised either together or separately. Lender, in its sole discretion, may sell personal property security either separately from or together with real property security, whether or not the aggregate proceeds thereof exceed the Indebtedness secured hereby. At any sale, any combination of all of the security may be offered for sale for one total price and the proceeds of such sale accounted for in one account, without distinguishing between items of security or assigning to separate securities proportions of the proceeds. If in the exercise of the power of sale, Lender elects to sell in parts or parcels, such sales may be held from time to time, and the power shall not be fully executed until all of the personal property security and real property security has been sold. In case of a foreclosure sale, the Mortgaged Premises, or so much thereof as may be affected by this Mortgage, may be sold in one parcel or multiple parcels, at Lender's sole discretion.

**19. APPOINTMENT OF RECEIVER.** Lender in any action to foreclose this Mortgage shall be entitled to the appointment of a receiver.

**20. FINANCIAL INFORMATION.** At Lender's request, Borrower shall provide, in a form acceptable to Lender, a current balance sheet and income statement annually and at such other additional times as Lender may request in connection with loans.

**21. BINDS HEIRS, EXECUTORS AND ASSIGNS.** The covenants, agreements and conditions contained herein shall bind and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto. The term "Lender" as used herein, shall be construed to include any lawful Holder of this Mortgage.

**22. SEVERABILITY.** If any provision of the Note(s), this Mortgage, any Loan Document or other obligation secured hereby, or any other document given to secure the said Indebtedness shall be determined to be invalid, inapplicable to any party or unenforceable, such determination shall not affect the validity, applicability or enforceability of any other provision of that instrument or of any other instrument.

**23. NOTICE.** Notice, demand or request of either party hereto shall be in writing and shall be served in person or by mail.

**24. GOVERNING LAW.** This Mortgage is subject to the provisions of the Farm Credit Act of 1971 and all acts amendatory thereof or supplementary thereto; and shall be interpreted according to the law of the State of New Jersey.

**25. LEGAL ENTITY WARRANTY.** If Borrower is a legal entity, Borrower represents and warrants that it is duly constituted under applicable laws and in good standing; that appropriate authorization has been obtained to enter into this Mortgage, the Loan Documents and all instruments evidencing the Indebtedness; and that when executed this Mortgage, all Loan Documents and all instruments evidencing the Indebtedness shall be valid and legally binding on Borrower.

**26. NO ORAL MODIFICATION.** This Mortgage may not be changed or modified orally, but only by a writing signed by the party against whom enforcement is sought.

**27. TIME OF THE ESSENCE.** For purposes of this Mortgage, the Loan Documents and the instruments evidencing the Indebtedness secured hereby, time is of the essence.

**28. LENDER'S REMEDIES CUMULAT** : The rights and remedies herein afforde : Lender shall be cumulative and supplementary to, and not exclusive of, any other rights and remedies afforded the holder of this mortgage under applicable laws.

**29. RELEASES.** Lender, at its sole option and without notice, may release any part of the security described herein, or release any person or entity liable for or guaranteeing the Indebtedness, or agree to extend time for payment of the Indebtedness, or provide "borrower rights" under the Farm Credit Act without in any way affecting the lien hereof (except to the extent released) or without releasing any unreleased person or entity obligated to pay or guaranty the Indebtedness.

**30. INTEREST AFTER DEFAULT OR MATURITY.** If the Indebtedness shall become due, either because of Borrower's default or because of demand or maturity under terms of the Note(s) evidencing such Indebtedness, then interest shall continue as provided for in said Note(s) until the Indebtedness is paid in full.

**31. EXECUTION OF DOCUMENTS.** Borrower covenants to execute, deliver, file and or record such documents or instruments, or take such other actions, as may be reasonably required by Lender to effectuate the intention of this transaction, or to assure the enforceability and collectability of the Indebtedness, the Loan Documents or the Mortgage lien, or to otherwise protect or enforce the rights of Lender hereunder.

**32. REMEDIES.** Upon the happening of any Event of Default, as described herein, Lender may forthwith undertake any one or more of the following:

a.) Recover judgement against Borrower for the entire Indebtedness and neither the recovery of judgment nor the levy of execution thereof on any property, including the Mortgaged Premises, shall affect Lender's rights hereunder or the lien hereof; and/or

b.) Enter upon and take possession of the Mortgaged Premises, and let the same, and receive the rents, issues and profits thereof, and apply the same, after payment of all necessary charges and expenses, on account of the amount secured hereby, with full power and authority to Lender to institute and prosecute all legal actions or proceedings as may be necessary for the protection of the Mortgaged Premises and as may be necessary to recover possession of the whole or any part thereof, to collect the rents then due and unpaid and thereafter becoming due, and to remove any and all tenants or other persons from the Mortgaged Premises, and to pay the costs and expenses of all such suits, actions and proceedings out of the rents received, and to maintain the said premises and to keep the same in repair, and to pay all costs and expenses of operating and maintaining said premises in good repair and condition, including the services of all employees, and to pay all assessments, utility charges, and water rents then due or thereafter becoming due and payable, and all premiums of insurance required by Lender, and to pay an agent to rent and manage said premises and collect the rents and profits

thereof, and to pay the reasonable value of such agent's services and all the aforesaid charges and expenses out of the rent received; and/or

c.) Apply for the appointment of a receiver of the rents and profits of the Mortgaged Premises, and be entitled to the appointment of such receiver as a matter of right, without consideration of the value of the mortgaged Premises as security for the amounts due Lender or of the solvency of any persons obligated for the payment of such amounts; and/or

d.) Prosecute, appeal, defend compromise and settle all tax appeals respecting the Mortgaged Premises and recover and apply in reduction of the Indebtedness secured hereby all proceeds therefrom, which proceeds are hereby assigned by Borrower to Lender; and/or

e.) Take such other action to protect and enforce Lender's rights hereunder and the lien hereof, as Lender deems advisable, including:

(i). The foreclosure hereof, subject, at Lender's option, to the rights of tenants and other persons in the Mortgaged Premises; and

(ii). The sale of the Mortgaged Premises in a foreclosure proceeding, in one or several parcels, at Lender's option and without obligation to have the Mortgaged Premises marshalled.

**33. AGENT.** The Borrower agrees that Lender may from time to time act as agent for and on behalf of certain other lenders, including without limitation, any wholly owned subsidiary of Lender, which designation and appointment as an agent is coupled with an interest, and that in such capacity as agent, Lender is authorized to take such actions on its behalf and on the behalf of those lenders for whom Lender is acting as agent under the provisions of this mortgage and to exercise all powers and perform such duties as it deems necessary or appropriate in connection with the mortgage, including without limitation, all available rights and remedies available hereunder to a lender or mortgagee for its account and the account of others.

NEW JERSEY   C.D. Real Estate Mortgage
11337  5/95

Name: __Rappaport, Liza__

Cust. #: __000017466 4__

Loan #: __4580486__

RECORD AND RETURN TO:
FIRST PIONEER FARM CREDIT, ACA
9 County Road 618
Lebanon, New Jersey 08833

$28^{12}$

LESLIE L. RAPPAPORT a/k/a LIZA RAPPAPORT, unmarried



TO

Instr#      8342894           Dorothy K. Tirpok
Recorded/Filed        NF    Hunterdon County Clerk
11/29/2001  15:05  Bk 2116 Pg 778 #Pg 7      MTG

FIRST PIONEER FARM CREDIT, ACA

## LINE OF CREDIT MORTGAGE

THIS MORTGAGE, is made this 28th day of NOVEMBER, 2001 between LESLIE L. RAPPAPORT also known as LIZA RAPPAPORT, unmarried, of 309 Wertsville Road, Ringoes, New Jersey 08551 ("Borrower") and FIRST PIONEER FARM CREDIT, ACA, a corporation organized and existing under the laws of the United States under the Farm Credit Act of 1971, as amended, having its principal office and place of business at 9 County Road 618  Lebanon, NJ  08833, County of Hunterdon, State of New Jersey ("Lender").

1. MAXIMUM AMOUNT SECURED. It is understood and agreed that the maximum amount to be secured at any one time outstanding by this Mortgage is the principal sum of SIX HUNDRED THOUSAND and 00/100 DOLLARS ($600,000.00), plus all interest, and plus all: taxes, insurance premiums, costs of collection (including reasonable attorneys fees), liability for environmental non-compliance and other amounts paid pursuant to the terms of this Mortgage, or of any Note, Loan Document or other obligation secured hereby, or amounts otherwise paid or incurred by Lender to preserve the mortgage lien. This Mortgage is subject to a Loan Agreement and all amendments thereto and renewals thereof.

The Parties to this Mortgage may agree to change the interest rate, due date, or other terms of this Mortgage or of the Indebtedness secured hereby. If the Parties agree to a change, which change is a "modification" as defined in P.L. 1985, c. 353, this Mortgage shall be subject to the priority provisions of that law.

Advances made pursuant to the terms of the Indebtedness secured by this Mortgage shall be "modifications" as defined in P.L. 1985, c 353, and the priority of this Mortgage shall be subject to that law.

2. PAYMENT OF INDEBTEDNESS. Borrower hereby agrees and binds himself jointly and severally to pay Lender, its successors or assigns, or the Holder of this Mortgage, all of the Indebtedness secured hereby, without any deduction or credit, together with interest at a VARIABLE INTEREST RATE and/or a FIXED INTEREST RATE thereon, and default interest on all amounts not paid when due, according to a certain Note(s) of even date herewith or according to certain other Note(s) or other obligations which may be given from time to time by Borrower to Lender and secured hereby, the terms of which are incorporated by reference and made a part hereof.

3. OBLIGATIONS SECURED. This Mortgage is given as continuing security for the payment of the aforesaid Note(s) and other obligations; and also as continuing additional security for the performance of all other covenants and agreements between Borrower and Lender; and for the payment and performance of all other claims, charges, debts, agreements, liabilities, obligations and indebtedness of Borrower to Lender (all collectively referred to as "Indebtedness"), whether now existing or arising hereafter, and whether arising out of this present financial transaction or transactions separate and unrelated hereto, and whether such Indebtedness is absolute, contingent, direct or indirect, and whether made as maker, endorser, guarantor or otherwise; and whether incurred by future advances (both obligatory and non-obligatory) or otherwise. Reference to this Mortgage as security for any Indebtedness shall not be required to be stated on the face of any document representing such Indebtedness or elsewhere. If such Indebtedness shall remain or become that of less than all of the Borrowers, any Borrower not liable therefor hereby expressly hypothecates his/her/their ownership in the Mortgaged Premises to the extent required to satisfy the Indebtedness without restriction or limitation unless such Borrower has been discharged in writing by Lender.

4. DESCRIPTION OF MORTGAGED PREMISES. To secure the payment of said Indebtedness, Borrower hereby mortgages the following described real estate located in the Ringoes Township of East Amwell, County of Hunterdon, and State of New Jersey, designated as Block 23, Lots  13 and 13.03, and also being all and the same premises as described in Exhibit "A", attached hereto and made a part hereof, which, together with the rights described in the following paragraphs, shall be collectively referred to herein as the "Mortgaged Premises".

TOGETHER WITH all and singular, the profits privileges and advantages, with the appurtenances to the same belonging or in any wise appertaining; and also, all the estate, right, title interest, property claim and demand whatsoever, of Borrower, of, in , and to the same, and every part or parcel thereof; TO HAVE AND TO HOLD all and singular the above described tract or parcel of land with the appurtenances unto the said Lender to its own proper use, benefit and behoof forever.

PROVIDED NEVERTHELESS, and these presents are upon the express condition that, if Borrower shall pay or cause to be paid to Lender the Indebtedness hereunder, despite any interim period during which no Indebtedness is outstanding; and if Borrower shall comply with all of the covenants hereunder; and if all Notes or other evidence of the Indebtedness are terminated and this Mortgage is discharged; then these presents shall be void. Otherwise this deed shall remain in full force and effect.

5. LIEN INCLUDES ALL RIGHTS IN THE PROPERTY. The lien granted by this Mortgage shall include all right, title and interest of Borrower in and to the Mortgaged Premises, including without limitation: all buildings, structures and improvements and all replacements and after acquired property of the same kind; all easements; all riparian and other rights running with the land; all fixtures now existing or hereafter attached to the property; the beds of all streets and roads in front of and adjoining said real estate to the center line thereof; all oil, gas, mineral, timber, water, sand, gravel, natural resources and other such rights; all awards for taking by condemnation or eminent domain of all or any portion of the Mortgaged Premises or any easement thereon, including awards for change of grade of streets; all insurance proceeds and unclaimed premiums payable under policies covering the Mortgaged Premises; and all leases affecting the Mortgaged Premises, which leases and all rents, royalties, income and other payments and rights thereunder are hereby assigned to Lender during the term hereof, and the possession of such leases and proceeds therefrom shall be delivered to Lender upon its demand.

PAGE 1 OF 5

EXHIBIT "A"

SITUATE, LYING AND BEING IN THE TOWNSHIP OF EAST AMWELL, COUNTY OF HUNTERDON, AND
STATE OF NEW JERSEY

BEGINNING at a spike found marking the intersection of the centerline of Wertsville Road also known as County Route No. 602, and the centerline of Manners Road also known as County Route No. 609, and from said point of beginning running; thence

1) along the centerline of Manners Road, North 46 degrees 22 minutes 0 seconds West a distance of 423.83 feet to a spike found; thence

2) crossing over Manners Road and continuing along the southeasterly line of Lot 13.02, land now or formerly of Edward Quairoli, North 52 degrees 19 minutes 0 seconds East a distance of 360.00 feet to a point; thence

3) along the northeasterly lines of Lots 13.02 and 13.01, lands now or formerly of said Edward Quairoli and Joseph A. Olivacz respectively, North 46 degrees 22 minutes 0 seconds West a distance of 404.64 feet to a point and corner in the southeasterly line of Lot 1.09, lands now or formerly of Platt Homes, Inc; thence

4) with said line of Platt Homes, Inc., North 52 degrees 19 minutes 0 seconds East a distance of 459.63 feet to a point; thence

5) still along same North 62 degrees 23 minutes 0 seconds East a distance of 665.00 feet to a point in the southwesterly line of Lot 1.10; thence

6) with said line of Lot 1.10 and continuing along the southwesterly line of Lot 12, South 38 degrees 10 minutes 0 seconds East a distance of 686.98 feet to a spike found in the centerline of Wertsville Road; thence

7) along the centerline of Wertsville Road South 53 degrees 57 minutes 0 seconds West a distance of 294.41 feet to a spike found; thence

8) still along said centerline of Wertsville Road South 39 degrees 58 minutes 0 seconds West a distance of 445.47 feet to a point; thence

9) still along the centerline of Wertsville Road South 58 degrees 48 minutes 0 seconds West a distance of 629.70 feet to the point and place of BEGINNING.

CONTAINING 23.0230 acres of land.

ALL as more particularly shown on a "Plan Of Survey Prepared For Lots 13 And 13.03 In Block 23, Located in East Amwell Township, Hunterdon County, New Jersey", prepared by Saladin Associates, P.C. dated June 25, 1993.

THE above premises being known and designated as Block 23, Lots 13 and 13.03 on the Tax Map of the Township of East Amwell.

continued...

Subject to 15-foot wide Right of Way Grant to New Jersey Power & Light Company dated September 10, 1964 and recorded in Deed Book 671, page 200.

Subject to road widening and sight easement to The County of Hunterdon dated February 1, 1979 and recorded in Deed Book 841, page 13.

Subject to a 50-foot wide drainge easement as referred to in Deed Book 1093, page 357 and Deed Book 1121, page 65.

Subject to rights, public and private, in and to that portion of the subject premises as lies within the bed or right of way of Wertsville Road and Manners Road.

Subject to a 25-foot wide drainage easement as shown on "Final Plat for Major Subdivision of Serendipity Farms" filed in the Hunterdon County Clerk's Office on May 17, 1978 as Map No. 575.

Subject to the rights of those thereto entitled in and to the existing swale and stream, as shown on survey by Saladin Associates, P.C. dated June 25, 1993, including but not limited to flooding and drainage rights and the uninterrupted free flow of waters therein.

Subject to the rights of others in and to a certain driveway on the northerly 150 feet of the lot off Manners Road as set forth in Deed Book 1093, page 357 and Deed Book 1121, page 65.

Together with the rights in an easement over the northerly adjacent lot 1.09 for the benefit of Lot 13 for ingress, egress and access as provided for in Deed Book 831, page 527.

BEING the same lands and premises conveyed to Donald M. Rappaport and Leslie L. Rappaport by Deed from Peter E. Soly and Einar V. Hansson, unmarried, dated March 2, 1992 and recorded at the Hunterdon County Clerk's Office in Deed Book 1093, page 357; and also as conveyed to Leslie L. Rappaport, also known as Liza Rappaport, by Deed from Donald M. Rappaport, also known as Donn M. Rappaport, and Leslie L. Rappaport, also known as Liza Rappaport, husband and wife, dated December 9, 1994 and recorded at the Hunterdon County Clerk's Office in Deed Book 1121, page 65.

THIS is a first Mortgage on the within premises.

It is agreed that this Mortgage shall be considered a financing statement pursuant to the Uniform Commercial Code covering all the Borrowers' personal property described herein.

**BORROWER'S COVENANTS**
Borrower covenants with Lender as follows:

**6. DEFAULT.** If one or more of the following "Events of Default" should occur, Lender shall have such rights and remedies as are provided in the Note(s) and Loan Documents, including without limitation and at Lender's sole option, the right to make demand or to accelerate the whole Indebtedness secured hereby.  No advance needs to be made or completed if one or more of the following Events of Default should occur:

a.)  A default for more than 30 days in the payment of:

(i) amounts demanded, or any installment of principal or of interest due, or any accelerated amount due under the Note(s) or other evidence of the Indebtedness, or under any obligation secured hereby, or under the terms of this Mortgage or any other instrument securing the Indebtedness; or

(ii) any tax, water rate or assessment; or

(iii) any amount not paid when due under any Loan Document; or

b.)  The failure of Borrower or any guarantor to observe, perform timely or comply with any provisions contained in the Note(s) or other evidence of the Indebtedness, in this Mortgage or any other instrument securing the Indebtedness, or in any Loan Agreement, Security Agreement, Guaranty or in any other legal document of any kind related to or subject hereto, or in any other obligations secured hereby (collectively called: **"Loan Documents"** ), or in any other obligations of Borrower or any guarantor to Lender or in which Lender has an interest; or

c.)  A breach of any warranty, representation, covenant or agreement contained herein or contained in the Loan Documents, or in any other obligations of Borrower or any guarantor to Lender or in which Lender has an interest; or any material misrepresentation relating thereto or contained therein or in any loan application or financial statement submitted to Lender; or

d.)  Failure to pay within 30 days of demand, or a declared default existing for more than 30 days, on any other note(s), mortgages or other obligations of Borrower or any guarantor to Lender or in which Lender has an interest; or

e.)  Declared default existing for more than 30 days on a mortgage or security agreement to any third party covering the Mortgaged Premises or personal property collateral; or

f.)  Failure to discharge within 60 days of entry, or of affirmation on appeal, any final judgement for the payment of money against Borrower or any guarantor; or

g.)  Borrower becomes insolvent or dissolves (if a legal entity); Borrower or any guarantor files or has filed against him any petition in Bankruptcy, or any equivalent action for relief in Bankruptcy Court, or enters into an assignment for the benefit of creditors or similar arrangement; or Borrower or any guarantor is subject to a court order appointing a receiver or trustee on his behalf.

**7. USE OF LOAN PROCEEDS AND COLLATERAL.** Borrower covenants and agrees that the proceeds of loans secured hereby shall be used only for the purposes set forth in the application therefor or specified by Lender; that the Mortgaged Premises herein described shall be maintained in a good and husbandlike manner, including the use of prudent and appropriate agricultural practices and soil conservation techniques; that the buildings, improvements and fixtures on Mortgaged Premises shall be kept in good repair; that any natural resources, including timber, topsoil, oil, gas, or water shall not be sold, leased or otherwise exploited without the prior written consent of Lender; that landfill operations, the spreading of sludge, sludge-derived products or other waste, or the deposit of hazardous or toxic substances, materials or waste, other than materials ordinarily used for agricultural purposes and used in accord with applicable laws, shall not be permitted without the prior written consent of Lender.  In addition, Borrower shall not commit nor suffer the commission of waste of Mortgaged Premises.  Borrower hereby grants to Lender, for as long as this Mortgage remains in effect, the irrevocable right to enter the Mortgaged Premises at reasonable times to conduct inspections, environmental audits or take such other actions as Lender, in its sole discretion and without any obligation to do so, may reasonably require to ascertain, to verify or to monitor the Mortgaged Premises' condition and Borrower's compliance with all applicable laws, rules and regulations and with the Covenants of this Mortgage.  Unless otherwise agreed in writing, all costs of any environmental audits and inspections shall be borne by Borrower.

**8. TITLE WARRANTY.** Borrower warrants that Borrower is lawfully seized of an indefeasible estate in fee simple in the Mortgaged Premises, and shall warrant and forever defend the title thereof unto Lender against all lawful claims whatsoever.

**9. ADVANCES.** Borrower shall receive and hold any advances secured hereby made for erecting an improvement on the Mortgaged Premises, and the right to receive such advances, as a trust fund to be applied first for the purpose of paying the cost of the contemplated improvement, and Borrower shall apply such advance(s) to payment of same before using any part for any other purpose.

**10. BUILDINGS.** No building, structure or improvement on the Mortgaged Premises shall be removed, demolished, or substantially changed without the prior written consent of Lender.

**11. NO SALE OR LEASE.** Borrower covenants and agrees that, after the date hereof, none of the following actions shall be taken or permitted without Lender's prior written consent:

a.)  Acquisition of legal or equitable title to all or any part of the Mortgaged Premises by anyone other than those in whom title is vested on the date hereof; or

b.)  All or any part of the Mortgaged Premises becoming subject to either a lease for a term exceeding one year or an installment sales contract, whether or not title passes; or

c.)  Any principal, stockholder or partner of the undersigned legal entity or an entity guaranteeing the Indebtedness selling or otherwise transferring his/her ownership, stock or partnership interest in such entity.

**12. ENVIRONMENTAL REQUIREMENTS.** Borrower shall comply strictly with the requirements of all applicable federal, state and local environmental laws, rules and regulations and shall not become involved in operations on the Mortgaged Premises or other locations which could lead to Borrower's or Lender's liability thereunder. If Borrower fails to so comply, Lender, at its sole option but without any obligation to do so, may give such notices, incur such expense, take such actions

PAGE 2 OF 5

or cause such work to be performed on the Mortgaged Premises or take any and all other actions as Lender is necessary or prudent to cure such failure of compliance. Any amounts paid as a result thereof, together with interest thereon according to the terms of the Note(s) or obligations secured hereby, shall be due and payable from Borrower to Lender on demand, and until paid shall become a part of the Indebtedness secured hereby with the same lien priority, notwithstanding any limitation of Indebtedness otherwise provided for herein, and the same may be collected as part of the principal debt in any suit hereon or upon the Note(s) or other obligations secured hereby.

Borrower does hereby jointly and severally agree to indemnify, defend and hold Lender harmless of and from any and all: liabilities, liens, assessments, suits, damages, judgments, costs and expenses, environmental audit fees and costs, attorney fees, consultant's fees, clean up costs, removal or response costs arising out of the presence, handling and disposal of hazardous or toxic waste, materials or substances of any kind whatsoever in connection with the Mortgaged Premises, including without limitation the assertion of any lien taking priority over the lien hereof, or arising out of any requirement of ECRA, the Spill Act or any other applicable law or regulation.

Borrower represents and warrants to Lender that:

a.) To the best of Borrower's knowledge: the Mortgaged Premises are in compliance with all applicable environmental laws, rules and regulations; no part of the Mortgaged Premises or other real property owned or occupied by Borrower in the State of New Jersey has been used or is now used as a "Major Facility," as defined in N.J.S.A. 58:10-23.11(b)1 and shall not be used as such in the future; and Borrower shall not suffer or permit the Mortgaged Premises to be used in a manner so as to be considered an "Industrial Establishment" as such term is defined in the ECRA law and regulations. If ECRA becomes applicable to the Mortgaged Premises (which, at

Lender's sole option shall be an Event of Default hereunder), Borrower shall comply with ECRA and shall cause all tenants to comply with ECRA. Borrower shall notify Lender of any termination of any lease or the closing of any operations and shall provide evidence of compliance by tenants with the provisions of ECRA if such lease termination or closing of operations occurs.

b.) To the best of Borrower's knowledge, Borrower has made full disclosure to Lender of: all now known or reasonably suspected environmental problems or conditions on or adjacent to the Mortgaged Premises, and all environmental orders or agreements with federal, state and local authorities affecting Borrower or the Mortgaged Premises.

c.) If environmental contamination or non-compliance with applicable laws affecting Borrower or the Mortgaged Premises is discovered during the term of this Mortgage, Borrower shall:

(i) immediately notify Lender of the same;

(ii) promptly undertake at Borrower's own expense any remedial action, removal or compliance measures required;

(iii) promptly reimburse Lender for all sums Lender expends under this Environmental Requirements section or becomes liable to expend under applicable laws, rules and regulations.

Borrower acknowledges and agrees that any determination by Lender of compliance with environmental laws is made solely for Lender's own benefit. Such determination(s) shall not be disclosed to third parties or relied upon by Borrower or any third party.

All provisions of this Environmental Requirements section, including but not limited to indemnification, shall survive the discharge or other cancellation of this Mortgage and the Indebtedness.

**13. INSURANCE.** Using insurors acceptable to Lender, Borrower shall keep the Mortgaged Premises insured against loss by fire, with extended coverage endorsement, and such other hazards (and in such amounts) as Lender may require, for the benefit of Lender, and naming Lender as the Insured. Borrower shall also, on Lender's demand furnish evidence of coverage to Lender and assign and deliver such policies to Lender. In the event of foreclosure of this Mortgage, Lender shall succeed to all the rights of Borrower in and to all policies required hereunder. If required by Lender, Federal Flood Insurance (if property qualifies), public liability insurance, workman's compensation insurance and other specified kinds of insurance shall be carried by Borrower. Terms of any insurance policy required hereunder shall provide for at least 30 days prior written notice of cancellation to Lender. Lender shall be entitled to receive all insurance proceeds and, at its sole option, to apply such proceeds to the Indebtedness or to reimburse Borrower of the cost of the replacement or repair of the Mortgaged Premises.

Lender shall not be liable to Borrower if insurance lapses; and Lender shall have no duty to notify Borrower of such lapse of insurance coverage. Lender, without obligation to do so, may obtain insurance and pay any late or delinquent insurance premiums related to the Mortgaged Premises. In such event, Lender, at its sole option, may: a) Obtain from Borrower reimbursement for any such amounts paid plus interest under the applicable Note(s), which amount shall be payable by Borrower on Lender's demand; or b) Add such amount to the Indebtedness secured hereby with interest and according to the terms of the applicable Note(s), despite the aforesaid limit on the maximum amount secured hereby; or c) Declare Borrower in default hereunder, subject to Borrower's right to cure within 30 days after Lender's notice and demand. Upon demand from Lender, Borrower shall surrender immediately all insurance policies covering the mortgaged premises, which policies in the event of foreclosure shall become the property of Lender, with full authority in Lender to make claims, to settle, compromise or dispose of same at its sole discretion for application to the Indebtedness secured hereby.

**14. TAXES, LIENS, JUDGMENTS AND ASSESSMENTS.** Borrower shall pay when due all taxes, liens, judgments, assessments, water and sewer rents, charges for utilities and environmental clean up costs affecting the Mortgaged Premises or the lien hereof; and Borrower shall furnish evidence of payment of same on Lender's demand. If Borrower fails to pay the same, Lender, at its sole option, may: a) Pay the same and add such amount to the Indebtedness secured hereby with interest and according to the terms of the Note(s) secured hereby, despite the aforesaid limit on the maximum amount secured hereby; or b) Obtain from Borrower reimbursement of the amount paid plus interest under the applicable Note(s), which amount shall be payable by Borrower on Lender's demand; or c) Declare Borrower in default hereunder, subject to Borrower's right to cure within 30 days after Lender's notice and demand.

**15. SET-OFF.** Immediately upon Borrower's default and without notice to Borrower, Lender shall have the right to set-off and apply to the Indebtedness, in such manner as Lender in its sole discretion may determine, any and all sums credited by or due from Lender to Borrower, whether in transit or in the possession of Lender. Such sums shall at all times constitute additional security for the Indebtedness secured hereby.

**16. NON WAIVER.** Waiver by Lender of the breach of any terms or covenants, or the failure of Lender to exercise any option given to it, or the granting by Lender of any forbearance, restructuring or "borrower rights" (as may be required or allowed under the Farm Credit Act or other applicable law or regulations) shall not be deemed to be a waiver of any subsequent breach of the same covenant or the breach of any other covenant, or of Lender's rights thereafter to exercise any such option. Nothing herein, or in any Loan Document shall limit or waive Lender's right to make demand under any demand obligation secured hereby. Any provision of this Mortgage may be waived only by a writing, signed by an authorized representative of Lender.

PAGE 3 OF 5

**17. COLLECTION COSTS AND FEES.** Borrower jointly and severally agrees to pay all costs, charges and expenses, including reasonable attorneys fees, which are: incurred by Lender in connection with preserving or protecting Lender's rights and interests under the Note(s) or this Mortgage or any Loan Document whether or not a legal action is filed; or incurred by Lender in the event of suit on the Note(s) or this Mortgage or any Loan Document; or incurred in other legal proceedings for the collection of the Indebtedness secured hereby; or incurred in any foreclosure brought by Lender; or incurred in any other legal proceeding to protect or sustain any mortgage or lien-granted as security for the debt secured hereby; or incurred in any litigation or controversy, including any action in Bankruptcy Court, affecting, arising from or connected with the said Note(s), Indebtedness, Loan Documents or this Mortgage. Such amounts together with interest shall be added to the unpaid principal balance hereof, notwithstanding the maximum amount of Indebtedness described above; shall be evidenced by the Note(s) and secured by this Mortgage; and shall be a lien of the same priority on the Mortgaged Premises.

Borrower further agrees to pay all reasonable fees, costs and expenses for all environmental audits or other environmental evaluations of the Mortgaged Premises, updates of environmental audits or evaluations, appraisals of the Mortgaged Premises, appraisal updates or other valuation services or professional opinions which may be required by Lender, in its sole discretion, from time to time in connection with this loan or the collection of the Indebtedness. All sums owing for such services shall be payable on Lender's demand. If unpaid for thirty (30) days after demand, such unpaid sum, at Lender's sole discretion, may either constitute a default on this Mortgage, or it may be added to the unpaid principle balance of the loan and secured by this Mortgage as a lien of the same priority.

**18. SALE OF COLLATERAL.** All Lender's rights to personal property security and real property security, in Lender's sole discretion, may be exercised either together or separately. Lender, in its sole discretion, may sell personal property security either separately from or together with real property security, whether or not the aggregate proceeds thereof exceed the Indebtedness secured hereby. At any sale, any combination of all of the security may be offered for sale for one total price and the proceeds of such sale accounted for in one account, without distinguishing between items of security or assigning to separate securities proportions of the proceeds. If in the exercise of the power of sale, Lender elects to sell in parts or parcels, such sales may be held from time to time, and the power shall not be fully executed until all of the personal property security and real property security has been sold. In case of a foreclosure sale, the Mortgaged Premises, or so much thereof as may be affected by this Mortgage, may be sold in one parcel or multiple parcels, at Lender's sole discretion.

**19. APPOINTMENT OF RECEIVER.** Lender in any action to foreclose this Mortgage shall be entitled to the appointment of a receiver.

**20. FINANCIAL INFORMATION.** At Lender's request, Borrower shall provide, in a form acceptable to Lender, a current balance sheet and income statement annually and at such other additional times as Lender may request in connection with loans.

**21. BINDS HEIRS, EXECUTORS AND ASSIGNS.** The covenants, agreements and conditions contained herein shall bind and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto. The term "Lender" as used herein, shall be construed to include any lawful Holder of this Mortgage.

**22. SEVERABILITY.** If any provision of the Note(s), this Mortgage, any Loan Document or other obligation secured hereby, or any other document given to secure the said Indebtedness shall be determined to be invalid, inapplicable to any party or unenforceable, such determination shall not affect the validity, applicability or enforceability of any other provision of that instrument or of any other instrument.

**23. NOTICE.** Notice, demand or request of either party hereto shall be in writing and shall be served in person or by mail.

**24. GOVERNING LAW.** This Mortgage is subject to the provisions of the Farm Credit Act of 1971 and all acts amendatory thereof or supplementary thereto; and shall be interpreted according to the law of the State of New Jersey.

**25. LEGAL ENTITY WARRANTY.** If Borrower is a legal entity, Borrower represents and warrants that it is duly constituted under applicable laws and in good standing; that appropriate authorization has been obtained to enter into this Mortgage, the Loan Documents and all instruments evidencing the Indebtedness; and that when executed this Mortgage, all Loan Documents and all instruments evidencing the Indebtedness shall be valid and legally binding on Borrower.

**26. NO ORAL MODIFICATION.** This Mortgage may not be changed or modified orally, but only by a writing signed by the party against whom enforcement is sought.

**27. TIME OF THE ESSENCE.** For purposes of this Mortgage, the Loan Documents and the instruments evidencing the Indebtedness secured hereby, time is of the essence.

**28. LENDER'S REMEDIES CUMULATIVE.** The rights and remedies herein afforded to Lender shall be cumulative and supplementary to, and not exclusive of, any other rights and remedies afforded the holder of this Mortgage under applicable laws.

**29. RELEASES.** Lender, at its sole option and without notice, may release any part of the security described herein, or release any person or entity liable for or guaranteeing the Indebtedness, or agree to extend time for payment of the Indebtedness, or provide "borrower rights" under the Farm Credit Act without in any way affecting the lien hereof (except to the extent released) or without releasing any unreleased person or entity obligated to pay or guaranty the Indebtedness.

**30. INTEREST AFTER DEFAULT OR MATURITY.** If the Indebtedness shall become due, either because of Borrower's default or because of demand or maturity under terms of the Note(s) evidencing such Indebtedness, then interest shall continue as provided for in said Note(s) until the Indebtedness is paid in full.

**31. EXECUTION OF DOCUMENTS.** Borrower covenants to execute, deliver, file and or record such documents or instruments, or take such other actions, as may be reasonably required by Lender to effectuate the intention of this transaction, or to assure the enforceability and collectability of the Indebtedness, the Loan Documents or the Mortgage lien, or to otherwise protect or enforce the rights of Lender hereunder.

**32. REMEDIES.** Upon the happening of any Event of Default, as described herein, Lender may forthwith undertake any one or more of the following:

a.) Recover judgement against Borrower for the entire Indebtedness and neither the recovery of judgment nor the levy of execution thereof on any property, including the Mortgaged Premises, shall affect Lender's rights hereunder or the lien hereof; and/or

b.) Enter upon and take possession of the Mortgaged Premises, and let the same, and receive the rents, issues and profits thereof, and apply the same, after payment of all necessary charges and expenses, on account of the amount secured hereby, with full power and authority to Lender to institute and prosecute all legal actions or proceedings as may be necessary for the protection of the Mortgaged Premises and as may be necessary to recover possession of the whole or any part thereof, to collect the rents then due and unpaid and thereafter becoming due, and to remove any and all tenants or other persons from the Mortgaged Premises, and to pay the costs and expenses of all such suits, actions and proceedings out of the rents received, and to maintain the said premises and to keep the same in repair, and to pay all costs and expenses of operating and maintaining said premises in good repair and condition, including the services of all employees, and to

PAGE 4 OF 5

pay all assessments, utility charges, and water ...hen due or thereafter becoming due and payable, and a ...niums of insurance required by Lender, and to pay an agent to rent and manage said premises a... ...ollect the rents and profits

thereof, and to pay the reasonable value of such agent's services and all the aforesaid charges and expenses out of the rent received; and/or

c.) Apply for the appointment of a receiver of the rents and profits of the Mortgaged Premises, and be entitled to the appointment of such receiver as a matter of right, without consideration of the value of the mortgaged Premises as security for the amounts due Lender or of the solvency of any persons obligated for the payment of such amounts; and/or

d.) Prosecute, appeal, defend compromise and settle all tax appeals respecting the Mortgaged Premises and recover and apply in reduction of the Indebtedness secured hereby all proceeds therefrom, which proceeds are hereby assigned by Borrower to Lender; and/or

e.) Take such other action to protect and enforce Lender's rights hereunder and the lien hereof, as Lender deems advisable, including:

(i). The foreclosure hereof, subject, at Lender's option, to the rights of tenants and other persons in the Mortgaged Premises; and

(ii). The sale of the Mortgaged Premises in a foreclosure proceeding, in one or several parcels, at Lender's option and without obligation to have the Mortgaged Premises marshalled.

**BORROWER ACKNOWLEDGES RECEIPT OF A TRUE COPY HEREOF WITHOUT CHARGE.**

**IN WITNESS WHEREOF,** this Mortgage has been duly executed by Borrower on the day and year written above. Signed, Sealed and Delivered in the Presence of:

| | |
|---|---|
| Witness (GEORGE M. DILTS) | Borrower (LESLIE L. RAPPAPORT a/k/a LIZA RAPPAPORT)   (L.S.) |
| Witness | Borrower   (L.S.) |
| Witness | Borrower   (L.S.) |
| | Borrower   (L.S.) |
| | Borrower       (name of entity) |
| Witness | BY   (L.S.) ITS |

**For Individuals:**
STATE OF NEW JERSEY        ) SS.
COUNTY OF HUNTERDON        )

BE IT REMEMBERED, that on this 28th day of NOVEMBER, 2001, ~~to wit~~ before me, the subscriber, an officer duly authorized pursuant to N.J.S.A. 46:14-6, personally appeared LESLIE L. RAPPAPORT a/k/a LIZA RAPPAPORT, unmarried, ~~and known~~, who I am satisfied, is/are the Borrower(s) mentioned in the within instrument and the person(s) signing the within instrument, and I having first made known to ~~him~~/her/~~them~~ the contents thereof, ~~he~~/she/~~they~~ did acknowledge that ~~he~~/she/~~they~~ signed, sealed and delivered the same as ~~his~~/her/~~their~~ voluntary act and deed for the uses and purposes therein expressed. Borrower(s) also acknowledge receipt of a true copy of this Mortgage.

~~Notary Public/Justice of the Peace~~
~~XXXXXXXXXXXXXX~~            GEORGE M. DILTS
                            ATTORNEY AT LAW OF
                            NEW JERSEY

**For Corporations:**
STATE OF NEW JERSEY        ) SS.
COUNTY OF                  )

BE IT REMEMBERED, that on this       day of       , 19    , before me the subscriber, an officer duly authorized pursuant to N.J.S.A. 46:14-6, personally appeared       , the President of       (the "Corporation"), and       , the Secretary of the Corporation, who, I am satisfied, are the persons who have signed the within instrument, and I having first made known to them the contents thereof, they did acknowledge that they signed, sealed and delivered the same as such officers aforesaid; and that the within instrument is the voluntary act and deed of the Corporation by virtue of the authority from its Board of Directors.

Notary Public/Justice of the Peace
My Commission expires.


**END OF DOCUMENT**

NEW JERSEY  C.D. Real Estate Mortgage
11337  5/95

'  RECORD AND RETURN TO:
FIRST PIONEER FARM CREDIT, ACA
9 County Road 618
Lebanon, New Jersey 08833

Recording Data

LESLIE L. RAPPAPORT a/k/a LIZA RAPPAPORT, unmarried

TO

FIRST PIONEER FARM CREDIT, ACA

Instr#    8457678
Recorded/Filed
10/27/2003    10:52

Dorothy K. Tirpok
ASB  Hunterdon County Clerk
Bk 2561 Pg 922 #Pg 7    MTG

## LINE OF CREDIT MORTGAGE

**THIS MORTGAGE,** is made this tenth day of SEPTEMBER, 2003 between LESLIE L. RAPPAPORT also known as LIZA RAPPAPORT, unmarried, of 309 Wertsville Road, Ringoes, New Jersey 08551 **("Borrower")** and FIRST PIONEER FARM CREDIT, ACA, a corporation organized and existing under the laws of the United States under the Farm Credit Act of 1971, as amended, having its principal office and place of business at 9 County Road 618  Lebanon, NJ  08833, County of Hunterdon, State of New Jersey **("Lender").**

**1. MAXIMUM AMOUNT SECURED.** It is understood and agreed that the maximum amount to be secured at any one time outstanding by this Mortgage is the principal sum of TWO HUNDRED THOUSAND and 00/100 DOLLARS ($200,000.00), plus all interest, and plus all: taxes, insurance premiums, costs of collection (including reasonable attorneys fees), liability for environmental non-compliance and other amounts paid pursuant to the terms of this Mortgage, or of any Note, Loan Document or other obligation secured hereby, or amounts otherwise paid or incurred by Lender to preserve the mortgage lien. This Mortgage is subject to a Loan Agreement and all amendments thereto and renewals thereof.

The Parties to this Mortgage may agree to change the interest rate, due date, or other terms of this Mortgage or of the Indebtedness secured hereby. If the Parties agree to a change, which change is a "modification" as defined in P.L. 1985, c. 353, this Mortgage shall be subject to the priority provisions of that law.

Advances made pursuant to the terms of the Indebtedness secured by this Mortgage shall be "modifications" as defined in P.L. 1985, c 353, and the priority of this Mortgage shall be subject to that law.

**2. PAYMENT OF INDEBTEDNESS.** Borrower hereby agrees and binds himself jointly and severally to pay Lender, its successors or assigns, or the Holder of this Mortgage, all of the Indebtedness secured hereby, without any deduction or credit, together with interest at a VARIABLE INTEREST RATE and/or a FIXED INTEREST RATE thereon, and default interest on all amounts not paid when due, according to a certain Note(s) of even date herewith or according to certain other Note(s) or other obligations which may be given from time to time by Borrower to Lender and secured hereby, the terms of which are incorporated by reference and made a part hereof.

**3. OBLIGATIONS SECURED.** This Mortgage is given as continuing security for the payment of the aforesaid Note(s) and other obligations; and also as continuing additional security for the performance of all other covenants and agreements between Borrower and Lender; and for the payment and performance of all other claims, charges, debts, agreements, liabilities, obligations and indebtedness of Borrower to Lender (all collectively referred to as **"Indebtedness"**), whether now existing or arising hereafter, and whether arising out of this present financial transaction or transactions separate and unrelated hereto, and whether such Indebtedness is absolute, contingent, direct or indirect, and whether made as maker, endorser, guarantor or otherwise; and whether incurred by future advances (both obligatory and non-obligatory) or otherwise. Reference to this Mortgage as security for any Indebtedness shall not be required to be stated on the face of any document representing such Indebtedness or elsewhere. If such Indebtedness shall remain or become that of less than all of the Borrowers, any Borrower not liable therefor hereby expressly hypothecates his/her/their ownership in the Mortgaged Premises to the extent required to satisfy the Indebtedness without restriction or limitation unless such Borrower has been discharged in writing by Lender.

**4. DESCRIPTION OF MORTGAGED PREMISES.** To secure the payment of said Indebtedness, Borrower hereby mortgages the following described real estate located in the ▨▨▨▨ Township of East Amwell, County of Hunterdon, and State of New Jersey, designated as Block 23, Lots  13 and 13.03, and also being all and the same premises as described in Exhibit "A", attached hereto and made a part hereof, which, together with the rights described in the following paragraphs, shall be collectively referred to herein as the **"Mortgaged Premises".**

**TOGETHER WITH** all and singular, the profits privileges and advantages, with the appurtenances to the same belonging or in any wise appertaining; and also, all the estate, right, title interest, property claim and demand whatsoever, of Borrower, of, in , and to the same, and every part or parcel thereof, TO HAVE AND TO HOLD all and singular the above described tract or parcel of land with the appurtenances unto the said Lender to its own proper use, benefit and behoof forever.

**PROVIDED NEVERTHELESS,** and these presents are upon the express condition that, if Borrower shall pay or cause to be paid to Lender the Indebtedness hereunder, despite any interim period during which no Indebtedness is outstanding; and if Borrower shall comply with all of the covenants hereunder; and if all Notes or other evidence of the Indebtedness are terminated and this Mortgage is discharged; then these presents shall be void. Otherwise this deed shall remain in full force and effect.

**5. LIEN INCLUDES ALL RIGHTS IN THE PROPERTY.** The lien granted by this Mortgage shall include all right, title and interest of Borrower in and to the Mortgaged Premises, including without limitation: all buildings, structures and improvements and all replacements and after acquired property of the same kind; all easements, all present and other rights running with the land; all fixtures now existing or hereafter attached to the property; the beds of all streets and roads in front of and adjoining said real estate to the center line thereof; all oil, gas, mineral, timber, water, sand, gravel, natural resources and other such rights; all awards for taking by condemnation or eminent domain of all or any portion of the Mortgaged Premises or any easement thereon, including awards for change of grade of streets; all insurance proceeds and unclaimed premiums payable under policies covering the Mortgaged Premises; and all leases affecting the Mortgaged Premises, which leases and all rents, royalties, income and other payments and rights thereunder are hereby assigned to Lender during the term hereof, and the possession of such leases and proceeds therefrom shall be delivered to Lender upon its demand.

PAGE 1 OF 5

EXHIBIT "A"

SITUATE, LYING AND BEING IN THE TOWNSHIP OF EAST AMWELL, COUNTY OF HUNTERDON, AND
STATE OF NEW JERSEY

BEGINNING at a spike found marking the intersection of the centerline of Wertsville Road also known as County Route No. 602, and the centerline of Manners Road also known as County Route No. 609, and from said point of beginning running; thence

1) along the centerline of Manners Road, North 46 degrees 22 minutes 0 seconds West a distance of 423.83 feet to a spike found; thence

2) crossing over Manners Road and continuing along the southeasterly line of Lot 13.02, land now or formerly of Edward Quairoli, North 52 degrees 19 minutes 0 seconds East a distance of 360.00 feet to a point; thence

3) along the northeasterly lines of Lots 13.02 and 13.01, lands now or formerly of said Edward Quairoli and Joseph A. Olivacz respectively, North 46 degrees 22 minutes 0 seconds West a distance of 404.64 feet to a point and corner in the southeasterly line of Lot 1.09, lands now or formerly of Platt Homes, Inc; thence

4) with said line of Platt Homes, Inc., North 52 degrees 19 minutes 0 seconds East a distance of 459.63 feet to a point; thence

5) still along same North 62 degrees 23 minutes 0 seconds East a distance of 665.00 feet to a point in the southwesterly line of Lot 1.10; thence

6) with said line of Lot 1.10 and continuing along the southwesterly line of Lot 12, South 38 degrees 10 minutes 0 seconds East a distance of 686.98 feet to a spike found in the centerline of Wertsville Road; thence

7) along the centerline of Wertsville Road South 53 degrees 57 minutes 0 seconds West a distance of 294.41 feet to a spike found; thence

8) still along said centerline of Wertsville Road South 39 degrees 58 minutes 0 seconds West a distance of 445.47 feet to a point; thence

9) still along the centerline of Wertsville Road South 58 degrees 48 minutes 0 seconds West a distance of 629.70 feet to the point and place of BEGINNING.

CONTAINING 23.0230 acres of land.

ALL as more particularly shown on a "Plan Of Survey Prepared For Lots 13 And 13.03 In Block 23, Located in East Amwell Township, Hunterdon County, New Jersey", prepared by Saladin Associates, P.C. dated June 25, 1993.

THE above premises being known and designated as Block 23, Lots 13 and 13.03 on the Tax Map of the Township of East Amwell.

continued...

Subject to 15-foot wide Right of Way Grant to New Jersey Power & Light Company dated September 10, 1964 and recorded in Deed Book 671, page 200.

Subject to road widening and sight easement to The County of Hunterdon dated February 1, 1979 and recorded in Deed Book 841, page 13.

Subject to a 50-foot wide drainge easement as referred to in Deed Book 1093, page 357 and Deed Book 1121, page 65.

Subject to rights, public and private, in and to that portion of the subject premises as lies within the bed or right of way of Wertsville Road and Manners Road.

Subject to a 25-foot wide drainage easement as shown on "Final Plat for Major Subdivision of Serendipity Farms" filed in the Hunterdon County Clerk's Office on May 17, 1978 as Map No. 575.

Subject to the rights of those thereto entitled in and to the existing swale and stream, as shown on survey by Saladin Associates, P.C. dated June 25, 1993, including but not limited to flooding and drainage rights and the uninterrupted free flow of waters therein.

Subject to the rights of others in and to a certain driveway on the northerly 150 feet of the lot off Manners Road as set forth in Deed Book 1093, page 357 and Deed Book 1121, page 65.

Together with the rights in an easement over the northerly adjacent lot 1.09 for the benefit of Lot 13 for ingress, egress and access as provided for in Deed Book 831, page 527.

BEING the same lands and premises conveyed to Donald M. Rappaport and Leslie L. Rappaport by Deed from Peter E. Soly and Einar V. Hansson, unmarried, dated March 2, 1992 and recorded at the Hunterdon County Clerk's Office in Deed Book 1093, page 357; and also as conveyed to Leslie L. Rappaport, also known as Liza Rappaport, by Deed from Donald M. Rappaport, also known as Donn M. Rappaport, and Leslie L. Rappaport, also known as Liza Rappaport, husband and wife, dated December 9, 1994 and recorded at the Hunterdon County Clerk's Office in Deed Book 1121, page 65.

THIS mortgage is second and subordinate to a first Mortgage from Leslie L. Rappaport a/k/a Liza Rappaport, unmarried, to First Pioneer Farm Credit, ACA, dated November 28, 2001 and recorded at the Hunterdon County Clerk's Office in Mortgage Book 2116, page 178 in the original principal amount of $600,000.00.

It is agreed that this Mortgage shall be con.      ed a financing statement pursuant to the Uniform Com.      ial Code covering all the Borrowers' personal property described herein.

## BORROWER'S COVENANTS

Borrower covenants with Lender as follows:

**6. DEFAULT.** If one or more of the following **"Events of Default"** should occur, Lender shall have such rights and remedies as are provided in the Note(s) and Loan Documents, including without limitation and at Lender's sole option, the right to make demand or to accelerate the whole Indebtedness secured hereby. No advance needs to be made or completed if one or more of the following Events of Default should occur:

a.)     A default for more than 30 days in the payment of:

(i) amounts demanded, or any installment of principal or of interest due, or any accelerated amount due under the Note(s) or other evidence of the Indebtedness, or under any obligation secured hereby, or under the terms of this Mortgage or any other instrument securing the Indebtedness; or

(ii) any tax, water rate or assessment; or

(iii) any amount not paid when due under any Loan Document; or

b.)     The failure of Borrower or any guarantor to observe, perform timely or comply with any provisions contained in the Note(s) or other evidence of the Indebtedness, in this Mortgage or any other instrument securing the Indebtedness, or in any Loan Agreement, Security Agreement, Guaranty or in any other legal document of any kind related to or subject hereto, or in any other obligations secured hereby (collectively called: **"Loan Documents"** ), or in any other obligations of Borrower or any guarantor to Lender or in which Lender has an interest; or

c.)     A breach of any warranty, representation, covenant or agreement contained herein or contained in the Loan Documents, or in any other obligations of Borrower or any guarantor to Lender or in which Lender has an interest; or any material misrepresentation relating thereto or contained therein or in any loan application or financial statement submitted to Lender; or

d.)     Failure to pay within 30 days of demand, or a declared default existing for more than 30 days, on any other note(s), mortgages or other obligations of Borrower or any guarantor to Lender or in which Lender has an interest; or

e.)     Declared default existing for more than 30 days on a mortgage or security agreement to any third party covering the Mortgaged Premises or personal property collateral; or

f.)     Failure to discharge within 60 days of entry, or of affirmation on appeal, any final judgement for the payment of money against Borrower or any guarantor; or

g.)     Borrower becomes insolvent or dissolves (if a legal entity); Borrower or any guarantor files or has filed against him any petition in Bankruptcy, or any equivalent action for relief in Bankruptcy Court, or enters into an assignment for the benefit of creditors or similar arrangement; or Borrower or any guarantor is subject to a court order appointing a receiver or trustee on his behalf.

**7. USE OF LOAN PROCEEDS AND COLLATERAL.** Borrower covenants and agrees that the proceeds of loans secured hereby shall be used only for the purposes set forth in the application therefor or specified by Lender; that the Mortgaged Premises herein described shall be maintained in a good and husbandlike manner, including the use of prudent and appropriate agricultural practices and soil conservation techniques; that the buildings, improvements and fixtures on Mortgaged Premises shall be kept in good repair; that any natural resources, including timber, topsoil, oil, gas, or water shall not be sold, leased or otherwise exploited without the prior written consent of Lender; that landfill operations, the spreading of sludge, sludge-derived products or other waste, or the deposit of hazardous or toxic substances, materials or waste, other than materials ordinarily used for agricultural purposes and used in accord with applicable laws, shall not be permitted without the prior written consent of Lender. In addition, Borrower shall not commit nor suffer the commission of waste of Mortgaged Premises. Borrower hereby grants to Lender, for as long as this Mortgage remains in effect, the irrevocable right to enter the Mortgaged Premises at reasonable times to conduct inspections, environmental audits or take such other actions as Lender, in its sole discretion and without any obligation to do so, may reasonably require to ascertain, to verify or to monitor the Mortgaged Premises' condition and Borrower's compliance with all applicable laws, rules and regulations and with the Covenants of this Mortgage. Unless otherwise agreed in writing, all costs of any environmental audits and inspections shall be borne by Borrower.

**8. TITLE WARRANTY.** Borrower warrants that Borrower is lawfully seized of an indefeasible estate in fee simple in the Mortgaged Premises, and shall warrant and forever defend the title thereof unto Lender against all lawful claims whatsoever.

**9. ADVANCES.** Borrower shall receive and hold any advances secured hereby made for erecting an improvement on the Mortgaged Premises, and the right to receive such advances, as a trust fund to be applied first for the purpose of paying the cost of the contemplated improvement, and Borrower shall apply such advance(s) to payment of same before using any part for any other purpose.

**10. BUILDINGS.** No building, structure or improvement on the Mortgaged Premises shall be removed, demolished, or substantially changed without the prior written consent of Lender.

**11. NO SALE OR LEASE.** Borrower covenants and agrees that, after the date hereof, none of the following actions shall be taken or permitted without Lender's prior written consent:

a.)     Acquisition of legal or equitable title to all or any part of the Mortgaged Premises by anyone other than those in whom title is vested on the date hereof; or

b.)     All or any part of the Mortgaged Premises becoming subject to either a lease for a term exceeding one year or an installment sales contract, whether or not title passes; or

c.)     Any principal, stockholder or partner of the undersigned legal entity or an entity guaranteeing the Indebtedness selling or otherwise transferring his/her ownership, stock or partnership interest in such entity.

**12. ENVIRONMENTAL REQUIREMENTS.** Borrower shall comply strictly with the requirements of all applicable federal, state and local environmental laws, rules and regulations and shall not become involved in operations on the Mortgaged Premises or other locations which could lead to Borrower's or Lender's liability thereunder. If Borrower fails to so comply, Lender, at its sole option but without any obligation to do so, may give such notices, incur such expense, take such actions

PAGE 2 OF 5

or cause such work to be performed on the mortgaged Premises or such other actions as Lender deems necessary or prudent to cure such failure of compliance. Any amounts paid as a result thereof, together with interest thereon according to the terms of the Note(s) or obligations secured hereby, shall be due and payable from Borrower to Lender on demand, and until paid shall become a part of the Indebtedness secured hereby with the same lien priority, notwithstanding any limitation of Indebtedness otherwise provided for herein, and the same may be collected as part of the principal debt in any suit hereon or upon the Note(s) or other obligations secured hereby.

Borrower does hereby jointly and severally agree to indemnify, defend and hold Lender harmless of and from any and all: liabilities, liens, assessments, suits, damages, judgments, costs and expenses, environmental audit fees and costs, attorney fees, consultant's fees, clean up costs, removal or response costs arising out of the presence, handling and disposal of hazardous or toxic waste, materials or substances of any kind whatsoever in connection with the Mortgaged Premises, including without limitation the assertion of any lien taking priority over the lien hereof, or arising out of any requirement of ECRA, the Spill Act or any other applicable law or regulation.

Borrower represents and warrants to Lender that:

a.) To the best of Borrower's knowledge: the Mortgaged Premises are in compliance with all applicable environmental laws, rules and regulations; no part of the Mortgaged Premises or other real property owned or occupied by Borrower in the State of New Jersey has been used or is now used as a "Major Facility", as defined in N.J.S.A. 58:10-23.11(b)1 and shall not be used as such in the future; and Borrower shall not suffer or permit the Mortgaged Premises to be used in a manner so as to be considered an "Industrial Establishment" as such term is defined in the ECRA law and regulations. If ECRA becomes applicable to the Mortgaged Premises (which, at

Lender's sole option shall be an Event of Default hereunder), Borrower shall comply with ECRA and shall cause all tenants to comply with ECRA. Borrower shall notify Lender of any termination of any lease or the closing of any operations and shall provide evidence of compliance by tenants with the provisions of ECRA if such lease termination or closing of operations occurs.

b.) To the best of Borrower's knowledge, Borrower has made full disclosure to Lender of: all now known or reasonably suspected environmental problems or conditions on or adjacent to the Mortgaged Premises, and all environmental orders or agreements with federal, state and local authorities affecting Borrower or the Mortgaged Premises.

c.) If environmental contamination or non-compliance with applicable laws affecting Borrower or the Mortgaged Premises is discovered during the term of this Mortgage, Borrower shall:

(i) immediately notify Lender of the same;

(ii) promptly undertake at Borrower's own expense any remedial action, removal or compliance measures required;

(iii) promptly reimburse Lender for all sums Lender expends under this Environmental Requirements section or becomes liable to expend under applicable laws, rules and regulations.

Borrower acknowledges and agrees that any determination by Lender of compliance with environmental laws is made solely for Lender's own benefit. Such determination(s) shall not be disclosed to third parties or relied upon by Borrower or any third party.

All provisions of this Environmental Requirements section, including but not limited to indemnification, shall survive the discharge or other cancellation of this Mortgage and the Indebtedness.

**13. INSURANCE.** Using insurors acceptable to Lender, Borrower shall keep the Mortgaged Premises insured against loss by fire, with extended coverage endorsement, and such other hazards (and in such amounts) as Lender may require, for the benefit of Lender, and naming Lender as the Insured. Borrower shall also, on Lender's demand furnish evidence of coverage to Lender and assign and deliver such policies to Lender. In the event of foreclosure of this Mortgage, Lender shall succeed to all the rights of Borrower in and to all policies required hereunder. If required by Lender, Federal Flood Insurance (if property qualifies), public liability insurance, workman's compensation insurance and other specified kinds of insurance shall be carried by Borrower. Terms of any insurance policy required hereunder shall provide for at least 30 days prior written notice of cancellation to Lender. Lender shall be entitled to receive all insurance proceeds and, at its sole option, to apply such proceeds to the Indebtedness of to reimburse Borrower of the cost of the replacement or repair of the Mortgaged Premises.

Lender shall not be liable to Borrower if insurance lapses; and Lender shall have no duty to notify Borrower of such lapse of insurance coverage. Lender, without obligation to do so, may obtain insurance and pay any late or delinquent insurance premiums related to the Mortgaged Premises. In such event, Lender, at its sole option, may: a) Obtain from Borrower reimbursement for any such amounts paid plus interest under the applicable Note(s), which amount shall be payable by Borrower on Lender's demand; or b) Add such amount to the Indebtedness secured hereby with interest and according to the terms of the applicable Note(s), despite the aforesaid limit on the maximum amount secured hereby; or c) Declare Borrower in default hereunder, subject to Borrower's right to cure within 30 days after Lender's notice and demand. Upon demand from Lender, Borrower shall surrender immediately all insurance policies covering the mortgaged premises, which policies in the event of foreclosure shall become the property of Lender, with full authority in Lender to make claims, to settle, compromise or dispose of same at its sole discretion for application to the Indebtedness secured hereby.

**14. TAXES, LIENS, JUDGMENTS AND ASSESSMENTS.** Borrower shall pay when due all taxes, liens, judgments, assessments, water and sewer rents, charges for utilities and environmental clean up costs affecting the Mortgaged Premises or the lien hereof; and Borrower shall furnish evidence of payment of same on Lender's demand. If Borrower fails to pay the same, Lender, at its sole option, may: a) Pay the same and add such amount to the Indebtedness secured hereby with interest and according to the terms of the Note(s) secured hereby, despite the aforesaid limit on the maximum amount secured hereby; or b) Obtain from Borrower reimbursement of the amount paid plus interest under the applicable Note(s), which amount shall be payable by Borrower on Lender's demand; or c) Declare Borrower in default hereunder, subject to Borrower's right to cure within 30 days after Lender's notice and demand.

**15. SET-OFF.** Immediately upon Borrower's default and without notice to Borrower, Lender shall have the right to set-off and apply to the Indebtedness, in such manner as Lender in its sole discretion may determine, any and all sums credited by or due from Lender to Borrower, whether in transit or in the possession of Lender. Such sums shall at all times constitute additional security for the Indebtedness secured hereby.

**16. NON WAIVER.** Waiver by Lender of the breach of any terms or covenants, or the failure of Lender to exercise any option given to it, or the granting by Lender of any forbearance, restructuring or "borrower rights" (as may be required or allowed under the Farm Credit Act or other applicable law or regulations) shall not be deemed to be a waiver of any subsequent breach of the same covenant or the breach of any other covenant, or of Lender's rights thereafter to exercise any such option. Nothing herein, or in any Loan Document shall limit or waive Lender's right to make demand under any demand obligation secured hereby. Any provision of this Mortgage may be waived only by a writing, signed by an authorized representative of Lender.

**17. COLLECTION COSTS AND FEES.** Borrower jointly and severally agrees to pay all costs, charges and expenses, including reasonable attorneys fees, which are: incurred by Lender in connection with preserving or protecting Lender's rights and interests under the Note(s) or this Mortgage or any Loan Document whether or not a legal action is filed; or incurred by Lender in the event of suit on the Note(s) or this Mortgage or any Loan Document; or incurred in other legal proceedings for the collection of the Indebtedness secured hereby; or incurred in any foreclosure brought by Lender; or incurred in any other legal proceeding to protect or sustain any mortgage or lien granted as security for the debt secured hereby; or incurred in any litigation or controversy, including any action in Bankruptcy Court, affecting, arising from or connected with the said Note(s), Indebtedness, Loan Documents or this Mortgage. Such amounts together with interest shall be added to the unpaid principal balance hereof, notwithstanding the maximum amount of Indebtedness described above; shall be evidenced by the Note(s) and secured by this Mortgage; and shall be a lien of the same priority on the Mortgaged Premises.

Borrower further agrees to pay all reasonable fees, costs and expenses for all environmental audits or other environmental evaluations of the Mortgaged Premises, updates of environmental audits or evaluations, appraisals of the Mortgaged Premises, appraisal updates or other valuation services or professional opinions which may be required by Lender, in its sole discretion, from time to time in connection with this loan or the collection of the Indebtedness. All sums owing for such services shall be payable on Lender's demand. If unpaid for thirty (30) days after demand, such unpaid sum, at Lender's sole discretion, may either constitute a default on this Mortgage, or it may be added to the unpaid principle balance of the loan and secured by this Mortgage as a lien of the same priority.

**18. SALE OF COLLATERAL.** All Lender's rights to personal property security and real property security, in Lender's sole discretion, may be exercised either together or separately. Lender, in its sole discretion, may sell personal property security either separately from or together with real property security, whether or not the aggregate proceeds thereof exceed the Indebtedness secured hereby. At any sale, any combination of all of the security may be offered for sale for one total price and the proceeds of such sale accounted for in one account, without distinguishing between items of security or assigning to separate securities proportions of the proceeds. If in the exercise of the power of sale, Lender elects to sell in parts or parcels, such sales may be held from time to time, and the power shall not be fully executed until all of the personal property security and real property security has been sold. In case of a foreclosure sale, the Mortgaged Premises, or so much thereof as may be affected by this Mortgage, may be sold in one parcel or multiple parcels, at Lender's sole discretion.

**19. APPOINTMENT OF RECEIVER.** Lender in any action to foreclose this Mortgage shall be entitled to the appointment of a receiver.

**20. FINANCIAL INFORMATION.** At Lender's request, Borrower shall provide, in a form acceptable to Lender, a current balance sheet and income statement annually and at such other additional times as Lender may request in connection with loans.

**21. BINDS HEIRS, EXECUTORS AND ASSIGNS.** The covenants, agreements and conditions contained herein shall bind and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto. The term "Lender" as used herein, shall be construed to include any lawful Holder of this Mortgage.

**22. SEVERABILITY.** If any provision of the Note(s), this Mortgage, any Loan Document or other obligation secured hereby, or any other document given to secure the said Indebtedness shall be determined to be invalid, inapplicable to any party or unenforceable, such determination shall not affect the validity, applicability or enforceability of any other provision of that instrument or of any other instrument.

**23. NOTICE.** Notice, demand or request of either party hereto shall be in writing and shall be served in person or by mail.

**24. GOVERNING LAW.** This Mortgage is subject to the provisions of the Farm Credit Act of 1971 and all acts amendatory thereof or supplementary thereto; and shall be interpreted according to the law of the State of New Jersey.

**25. LEGAL ENTITY WARRANTY.** If Borrower is a legal entity, Borrower represents and warrants that it is duly constituted under applicable laws and in good standing; that appropriate authorization has been obtained to enter into this Mortgage, the Loan Documents and all instruments evidencing the Indebtedness; and that when executed this Mortgage, all Loan Documents and all instruments evidencing the Indebtedness shall be valid and legally binding on Borrower.

**26. NO ORAL MODIFICATION.** This Mortgage may not be changed or modified orally, but only by a writing signed by the party against whom enforcement is sought.

**27. TIME OF THE ESSENCE.** For purposes of this Mortgage, the Loan Documents and the instruments evidencing the Indebtedness secured hereby, time is of the essence.

**28. LENDER'S REMEDIES CUMULATIVE.** The rights and remedies herein afforded to Lender shall be cumulative and supplementary to, and not exclusive of, any other rights and remedies afforded the holder of this Mortgage under applicable laws.

**29. RELEASES.** Lender, at its sole option and without notice, may release any part of the security described herein, or release any person or entity liable for or guaranteeing the Indebtedness, or agree to extend time for payment of the Indebtedness, or provide "borrower rights" under the Farm Credit Act without in any way affecting the lien hereof (except to the extent released) or without releasing any unreleased person or entity obligated to pay or guaranty the Indebtedness.

**30. INTEREST AFTER DEFAULT OR MATURITY.** If the Indebtedness shall become due, either because of Borrower's default or because of demand or maturity under terms of the Note(s) evidencing such Indebtedness, then interest shall continue as provided for in said Note(s) until the Indebtedness is paid in full.

**31. EXECUTION OF DOCUMENTS.** Borrower covenants to execute, deliver, file and or record such documents or instruments, or take such other actions, as may be reasonably required by Lender to effectuate the intention of this transaction, or to assure the enforceability and collectability of the Indebtedness, the Loan Documents or the Mortgage lien, or to otherwise protect or enforce the rights of Lender hereunder.

**32. REMEDIES.** Upon the happening of any Event of Default, as described herein, Lender may forthwith undertake any one or more of the following:

a.) Recover judgement against Borrower for the entire Indebtedness and neither the recovery of judgment nor the levy of execution thereof on any property, including the Mortgaged Premises, shall affect Lender's rights hereunder or the lien hereof; and/or

b.) Enter upon and take possession of the Mortgaged Premises, and let the same, and receive the rents, issues and profits thereof, and apply the same, after payment of all necessary charges and expenses, on account of the amount secured hereby, with full power and authority to Lender to institute and prosecute all legal actions or proceedings as may be necessary for the protection of the Mortgaged Premises and as may be necessary to recover possession of the whole or any part thereof, to collect the rents then due and unpaid and thereafter becoming due, and to remove any and all tenants or other persons from the Mortgaged Premises, and to pay the costs and expenses of all such suits, actions and proceedings out of the rents received, and to maintain the said premises and to keep the same in repair, and to pay all costs and expenses of operating and maintaining said premises in good repair and condition, including the services of all employees, and to

PAGE 4 OF 5

pay all assessments, utility charges, and other rents then due or thereafter becoming due and payable all premiums of insurance required by Lender, and to pay an agent to rent and manage said premises and collect the rents and profits

thereof, and to pay the reasonable value of such agent's services and all the aforesaid charges and expenses out of the rent received; and/or

c.) Apply for the appointment of a receiver of the rents and profits of the Mortgaged Premises, and be entitled to the appointment of such receiver as a matter of right, without consideration of the value of the mortgaged Premises as security for the amounts due Lender or of the solvency of any persons obligated for the payment of such amounts; and/or

d.) Prosecute, appeal, defend compromise and settle all tax appeals respecting the Mortgaged Premises and recover and apply in reduction of the Indebtedness secured hereby all proceeds therefrom, which proceeds are hereby assigned by Borrower to Lender; and/or

e.) Take such other action to protect and enforce Lender's rights hereunder and the lien hereof, as Lender deems advisable, including:

(i). The foreclosure hereof, subject, at Lender's option, to the rights of tenants and other persons in the Mortgaged Premises; and

(ii) The sale of the Mortgaged Premises in a foreclosure proceeding, in one or several parcels, at Lender's option and without obligation to have the Mortgaged Premises marshalled.

**BORROWER ACKNOWLEDGES RECEIPT OF A TRUE COPY HEREOF WITHOUT CHARGE.**

IN WITNESS WHEREOF, this Mortgage has been duly executed by Borrower on the day and year written above. Signed, Sealed and Delivered in the Presence of:

| Witness    (GEORGE M. DILTS) | Borrower (LESLIE L. RAPPAPORT a/k/a LIZA RAPPAPORT) (L.S.) |
|---|---|
| Witness | Borrower (L.S.) |
| Witness | Borrower (L.S.) |
| Witness | Borrower (L.S.) |
| | Borrower        (name of entity) |
| Witness | BY                                  (L.S.) ITS |

**For Individuals:**
STATE OF NEW JERSEY                        ) SS.
COUNTY OF HUNTERDON                        )

BE IT REMEMBERED, that on this tenth day of SEPTEMBER, 2003, before me, the subscriber, an officer duly authorized pursuant to N.J.S.A. 46:14-6, personally appeared LESLIE L. RAPPAPORT a/k/a LIZA RAPPAPORT, unmarried, who I am satisfied, is the Borrower(s) mentioned in the within instrument and the person(s) signing the within instrument, and I having first made known to her the contents thereof, she did acknowledge that she signed, sealed and delivered the same as her voluntary act and deed for the uses and purposes therein expressed. Borrower(s) also acknowledge receipt of a true copy of this Mortgage.

GEORGE M. DILTS
ATTORNEY AT LAW OF NEW JERSEY

**For Corporations:**
STATE OF NEW JERSEY                        ) SS.
COUNTY OF                                  )

BE IT REMEMBERED, that on this        day of        , 19    , before me the subscriber, an officer duly authorized pursuant to N.J.S.A. 46:14-6, personally appeared        , the President of        (the "Corporation"), and        , the Secretary of the Corporation, who, I am satisfied, are the persons who have signed the within instrument, and I having first made known to them the contents thereof, they did acknowledge that they signed, sealed and delivered the same as such officers aforesaid; and that the within instrument is the voluntary act and deed of the Corporation by virtue of the authority from its Board of Directors.

Notary Public/Justice of the Peace
My Commission expires:



END OF DOCUMENT

# EXHIBIT "C"

File No. CHL-19033
Phelan Hallinan & Diamond, PC
400 Fellowship Road
Mt. Laurel, NJ 08054
856-813-5500
FAX Number 856-813-5501
Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans
Servicing, LP servicer for Deutsche Bank National Trust Company, as Trustee for the Benefit of the Harborview 2004-8
Trust Fund

| | |
|---|---|
| In Re:<br><br>LESLIE L. PRICE RAPPAPORT<br>A/K/A L. LIZA PRICE<br>RAPPAPORT A/K/A LIZA PRICE<br>RAPPAPORT<br><br><br>Debtor | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>TRENTON VICINAGE<br><br>Chapter 11<br><br>Case No. 11-37107 - RTL<br><br>Hearing Date: 12/03/2012 |

The undersigned, Phelan Hallinan & Diamond, PC, attorneys for Secured Creditor, Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP servicer for Deutsche Bank National Trust Company, as Trustee for the Benefit of the Harborview 2004-8 Trust Fund., the holder of a Mortgage on debtor residence located at 309 WERTSVILLE ROAD, RINGOES, NJ 08551-1703 hereby objects to the Confirmation of the debtor proposed Chapter 11 Plan on the following grounds:

1. Movant, Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP servicer for Deutsche Bank National Trust Company, as Trustee for the Benefit of the Harborview 2004-8 Trust Fund's filed a valid secured Proof of Claim listing pre-petition arrears at $32,549.80

2. Debtors' Plan fails to cure the delinquency pursuant to 11 U.S.C. §1322(b)(5). A review of Debtor's Schedules indicates that the debtor does not sufficient excess income to cure Movant's pre-petition arrears.

3. Debtor's proposed Chapter 11 Plan should be denied and the case dismissed or converted to Chapter 7.

4. Movant objects to the Chapter 11 Plan as the amount listed does not cure the arrears set forth in its valid secured Proof of Claim. 11 U.S.C. §1322(b)(5).

5. Debtor's filed a Chapter 11 Plan provides for the sale or refinancing of the property on or before March 25, 2013. Also, said plan does not propose to make any payments to Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP servicer for Deutsche Bank National Trust Company, as Trustee for the Benefit of the Harborview 2004-8 Trust Fund outside of the plan. As there is no evidence of a contract for sale, Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP servicer for Deutsche Bank National Trust Company, as Trustee for the Benefit of the Harborview 2004-8 Trust Fund wants a provision to protect them in the event the sale of refinance falls through.

WHEREFORE Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP servicer for Deutsche Bank National Trust Company, as Trustee for the Benefit of the Harborview 2004-8 Trust Fund. respectfully requests that the Confirmation of Debtor Plan be denied.

/s/ Andrew Spivack
Andrew Spivack, Esq.
Phelan Hallinan & Diamond, PC

400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
Tel: 856-813-5500 Ext. 1566
Fax: 856-813-5501
Email: andrew.spivack@phelanhallinan.com

Dated: __12/04/2012_____

## NOTICE OF OBJECTION TO CONFIRMATION

Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP servicer for Deutsche Bank National Trust Company, as Trustee for the Benefit of the Harborview 2004-8 Trust Fund has filed papers with the Court to object to the Confirmation of the Chapter 11 Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to object to the Confirmation of the Chapter 11 Plan, or if you want the Court to consider your views on the Objection, then on or before, you or your attorney must:

1.       File with the Court an answer, explaining your position at:

**Clerk
U.S. Bankruptcy Court
402 E. State Street
Trenton, NJ 08608**

If you mail your response to the Court for filing, you must mail it early enough so that the Court will *receive* it on or before the date stated above.

You must also mail a copy to:

Phelan Hallinan & Diamond, PC                    , Trustee
400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054

2.       Attend the hearing scheduled to be held on 12/03/2012 in the TRENTON Bankruptcy Court, at the following address:

**U.S. Bankruptcy Court
402 E. State Street
Trenton, NJ 08608**

If you or your attorney do not make these steps, the Court may decide that you do not oppose the relief sought in the Objection and may enter an Order granting that relief.

Date:   __12/04/2012_____

/s/ Andrew Spivack
Andrew Spivack, Esq.
Phelan Hallinan & Diamond, PC
400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
Tel: 856-813-5500 Ext. 1566
Fax: 856-813-5501
Email: andrew.spivack@phelanhallinan.com