# GORSKI & KNOWLTON PC

CAROL L. KNOWLTON †
ALLEN I. GORSKI †

COUNSELLORS AT LAW
311 Whitehorse Ave, Suite A
TRENTON, NEW JERSEY 08619-4407

(609) 964-4000

FAX NO. (609) 585-2553

OF COUNSEL
BARRY W. FROST *

* NJ AND NY BAR
† NJ AND PA BAR

September 18, 2014

Honorable Christine M. Gravelle, U.S.B.J.
United States Bankruptcy Court
402 East State Street
Trenton, New Jersey 08608

Re:   **DEBTOR ESTATE OF LIZA PRICE RAPPAPORT**
      **CASE NO.: 11-37107-CMG**

Dear Judge Gravelle:

This office represents the Debtor in the above-referenced matter. Please accept this letter in lieu of a more formal response to the letter submitted to you by the attorney for The Ridge (#183 on the court docket).

The Debtor objects to the submission on behalf of The Ridge for the following reasons:

1. The Court has previously instructed the parties that there should be no further submissions regarding this matter.

2. The case provided by The Ridge's attorney is not the only case that has been recently decided. If the court is going to review the <u>Meiselman</u> decision, then the Debtor urges that the court should also consider the case of <u>The Ridge at Back Brook, LLC v. W. Thomas Klenert</u>, Docket No.: A-2345-12T1, decided August 12, 2014, by the Appellate Division of the Superior Court of New Jersey. A copy of that case is attached. The Appellate Division remanded the case back to the trial court to determine whether the formerly *pro se* Defendant should be allowed an opportunity to pursue the issue of whether the contract is unconscionable.

3. The case provided by The Ridge's attorney is not binding upon this court.

4. The case cited by The Ridge's attorney is, at best, minimally relevant here. That case does not deal with an offset or credit to be given in favor of the member. In that case, the members were suing Hamilton Farm Golf Club for return of their deposit. There is no mention of a lawsuit by the golf club against the members to recover dues, against which an offset or credit might be warranted. The District Court determined that they did not have standing because they had not been harmed yet. That is not the situation here, where The Ridge has sued the Debtor to collect dues,

and where The Ridge has claimed more than a million dollars in one of its many Proofs of Claim.

For all the reasons discussed above, the undersigned, on behalf of the Debtor, respectfully urges the Court that the <u>Meiselman</u> case is not binding upon nor relevant to this case.

Respectfully Submitted,

Gorski & Knowlton PC
Attorneys for the Debtor

By: *Carol L. Knowlton* (signature)
Carol L. Knowlton

CLK/bsc
Enc.
cc:    Liza Price Rappaport
        Deirdre Pacheco, Esq.;
        Shining Hsu, Esq.

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2345-12T1

THE RIDGE AT BACK BROOK, LLC,

    Plaintiff-Respondent,

v.

W. THOMAS KLENERT,

    Defendant-Appellant.

APPROVED FOR PUBLICATION

August 12, 2014

APPELLATE DIVISION

---

    Submitted July 8, 2014 – Decided August 12, 2014

    Before Judges Fisher, Grall and Messano.

    On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-611-10.

    Steven D. Janel, attorney for appellant.

    Wilentz, Goldman & Spitzer P.A., attorneys for respondent (Robert L. Selvers, of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Having carefully considered this appeal of an order denying Rule 4:50 relief, we conclude that the trial judge should have more liberally indulged the argument that his pro se status warranted a further opportunity for defendant — once he retained

counsel after entry of final judgment — to argue that the contract upon which the suit is based is unconscionable. Accordingly, we vacate the order denying Rule 4:50 relief and remand the matter for further proceedings.

I

The Ridge at Back Brook, L.L.C. (plaintiff), a New Jersey limited liability company which owns and operates an eighteen-hole golf course in Ringoes, filed a complaint against defendant W. Thomas Klenert, one of its members, on September 17, 2010. Plaintiff alleged that, by becoming a member, defendant became obligated to timely pay dues and something labeled "Option B" payments. In its complaint, plaintiff asserted that defendant defaulted on these financial obligations in 2004 and, by the time the complaint was filed nearly six years later, defendant owed $77,490 in dues and $10,800 in Option B payments, as well as sales tax and finance charges, for a total obligation of $160,214.40. Defendant, appearing on his own behalf, filed an answer denying the material allegations of the complaint. Thereafter, plaintiff served requests for admissions, pursuant to Rule 4:22, seeking defendant's admission of essentially every material aspect of plaintiff's claim. Defendant did not respond.

Relying on the admissions generated by defendant's failure to respond to the Rule 4:22 requests, as well as by the certification of plaintiff's managing member, plaintiff moved for summary judgment. Prior to the motion's return date, defendant filed a petition in the United States Bankruptcy Court for the District of New Jersey. The summary judgment motion was nevertheless granted on April 1, 2011.

Plaintiff recognized the order granting summary judgment was ineffectual because defendant's bankruptcy petition triggered the automatic stay provision contained in 11 U.S.C.A. § 362. Following the dismissal of the bankruptcy petition on March 21, 2012, plaintiff moved to vacate the April 1, 2011 order granting summary judgment but moved again for summary judgment based on the Rule 4:22 admissions, the facts previously asserted in support of its original motion, and a certification explaining how the amount due from defendant had increased to $253,456.01. In a short pro se pleading, defendant cursorily argued that the membership agreement was a contract of adhesion and its terms unconscionable.

On June 15, 2012, the trial judge entered an order that: vacated the earlier summary judgment, which was precipitously granted in violation of 11 U.S.C.A. § 362; granted the new summary judgment motion for the full amount sought; and provided

that attorneys' fees would be permitted once a certification of services was submitted.

In his written decision, the trial judge explained the basis for his ruling. He relied on the fact that defendant had failed to respond to plaintiff's Rule 4:22 requests, deeming those assertions to be admitted. The judge recognized that defendant had asserted that the membership agreement was a contract of adhesion and unconscionable but that defendant's brief written response to the renewed summary judgment was insufficient to demonstrate the existence of a genuine issue of material fact. That is, the judge determined that defendant had not provided facts or a further explanation of his view of the contract,[1] nor did he contest the amount claimed to be due. On April 20, 2012, the judge awarded plaintiff $8000 in counsel fees and entered final judgment in the amount of $261,456.01.

Plaintiff immediately sought to collect on the judgment, and obtained an order permitting defendant's deposition for purposes of identifying available assets; plaintiff also served an information subpoena. Shortly before the August 2012

---

[1] In this regard, the judge stated in full: "In his [c]ertification, defendant states that the contract he entered into with plaintiff is unconscionable and a contract of adhesion. . . . However, defendant provides absolutely no basis for such contention." We agree with the judge's view of the defendant's opposition.

deposition, counsel appeared for defendant and advised of defendant's intent to move for relief from the summary judgment pursuant to Rule 4:50. Consequently, plaintiff adjourned the deposition but soon thereafter moved for an order compelling defendant's response to the information subpoena; those responses were provided a few days prior to the motion's return date.

In November 2012, defendant moved, through counsel, for relief pursuant to Rule 4:50. In his supporting certification, defendant asserted that he became a member of the golf club in 1999 by providing a $45,000 deposit and by signing all the documents plaintiff required. He also asserted that the club did not open until 2002; that year he paid $7500 in dues. In 2003 he paid $10,000, and in 2004 he paid $13,500. Defendant claimed he later learned his dues "were improperly utilized for capital and debt service, contrary to the terms of the membership agreement, which provided it was to be utilized, if at all, exclusively for operational expenses." Defendant asserted that plaintiff took this course because "the project was millions of dollars over budget" even though plaintiff "affirmatively advised" at the contract's formation that "there was no debt and construction was within budget."

Defendant additionally claimed in support of his Rule 4:50 motion that:

> Eventually, I came to learn that the project was millions of dollars over budget, and it would be the members who would bear the same through extra costs and expenses not disclosed or anticipated at the time in which the membership agreement was entered into.
>
> More specifically, all existing members were forced to either (1) loan money to the [p]laintiff to finance the construction of the club house; or (2) pay an extra $2,400.00 per year to finance the construction. Again, this was contrary to my understanding of the agreement entered into and the representations made.
>
> Although the club opened for play in July 2002, the promised clubhouse and cart barn were not constructed. The clubhouse was not opened until June 2004. Moreover, the short game area was not completed at the time of my resignation, nor was the cart barn. This was contrary to the original representations.
>
> Additionally, the various membership rules continued to change through my tenure as a member, in ways which were not anticipated nor disclosed when I entered into the membership agreement. Apparently, the rules and by-laws allowed the [p]laintiff to make whatever changes they deemed appropriate regarding membership rights. However, a member had absolutely no redress regarding these rule changes, as there was no absolute right to resign from the club.
>
> From the date of my resignation in 2004 through service of the instant [c]omplaint in November 2010, I never received any demand for payment, notice that I was

6

A-2345-12T1

>       allegedly in breach of the membership
>       agreement, or any other dunning
>       correspondence. I did occasionally receive
>       bills for dues, but never gave them much
>       thought as I had resigned without objection
>       from [p]laintiff.

In addressing his failure to make better his case that the matter was not ripe for summary judgment, defendant asserted that when served with the complaint he "was in a very stressful financial condition, and could not afford to retain counsel." He explained that he attempted to represent himself "as best as [he] could," and he acknowledged that he "clearly did not meet the requirements set forth in the Court Rules." Defendant further asserted that he misunderstood his obligation to timely respond to plaintiff's Rule 4:22 request for admissions.

Defendant also claimed that the defenses he raised in opposition to summary judgment, as more fully explained in support of his Rule 4:50 motion, were found to have credence — or at least enough substance to avoid summary disposition — in litigation commenced by other club members in other courts. And he claimed that even if he could be found liable, the amount due had been improperly calculated.

The trial judge denied the Rule 4:50 motion on December 21, 2012. In his written decision, the judge rejected defendant's unconscionability argument on its merits, but without reference to legal authorities, stating:

7                                                         A-2345-12T1

> [D]efendant cannot assert the contract was unconscionable simply because years later, he is dissatisfied with the terms and is belatedly seeking to stop collection of this [c]ourt's judgment. Defendant was within his full rights to seek membership at a different golf club with different terms in the membership agreement. Instead, defendant willfully entered into an agreement with plaintiff and now, after he has resigned from membership in violation of the [a]greement, asserts the terms are unconscionable. This is not a sufficient basis to set aside a[n] [o]rder of [f]inal [j]udgment. This [c]ourt declines to rewrite a contract freely entered into by both parites simply because defendant has now fully appreciated the effect of [a] clause that was unambiguously included in his agreement at the time he entered into it. Moreover, the [c]ourt has previously addressed this issue and has found the contract to be valid.[2]

The judge also found that defendant, despite being self-represented up to and through the entry of final judgment, had sufficient opportunity to dispute the allegations upon which the judgment was based. And the judge determined that defendant had not moved for relief from the judgment within a reasonable period of time, concluding there were "no exceptional circumstances supplied by defendant that justify vacating a six-month old summary judgment decision, and a four-month old [o]rder of [f]inal [j]udgment." The judge lastly took note of

---

[2] The judge then referred to a decision he rendered in another member's lawsuit with the golf club.

8                                                              A-2345-12T1

the troubles to which plaintiff was put during defendant's delay in seeking relief from the judgment.

II

On January 30, 2013, defendant filed a notice of appeal that identified only the December 12, 2012 order — which denied his Rule 4:50 motion — as the order defendant would have us review. In his merits brief, however, defendant includes an argument that the trial judge erred in granting summary judgment eight months earlier. Even if we were to ignore defendant's failure to identify the earlier order in his notice of appeal,[3] and even if we were to assume the earlier summary judgment may be directly appealed at this late date,[4] we would reject this

---

[3] Rule 2:5-1(f)(3)(A) declares that, in civil actions, the notice of appeal "shall designate the judgment, decision, . . . or part thereof appealed from." We have recognized that the failure to comply with this rule permits our refusal to consider its merits. See, e.g., Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div.), aff'd o.b., 138 N.J. 41 (1994). We have, however, in appropriate circumstances, overlooked a party's failure to designate an order in the notice of appeal. See N. Jersey Neuro. Assoc. v. Clarendon Nat'l Ins. Co., 401 N.J. Super. 186, 196 (App. Div. 2008).

[4] Appeals must be filed within forty-five days of entry of final judgment. R. 2:4-1(a). This period may be extended for thirty days "on a showing of good cause and the absence of prejudice." R. 2:4-4(a). Here, the notice of appeal was filed eight months after entry of the April 20, 2012 final judgment and, thus, untimely even if an extension were permissible. "Where the appeal is untimely, the Appellate Division has no jurisdiction to decide the merits of the appeal." In re Hill, 241 N.J.
(continued)

argument. Defendant only factually responded to plaintiff's summary judgment motion by providing conclusory claims that the membership agreement was unconscionable and constituted a contract of adhesion. He never explained why.[5] Bald assertions are not capable of either supporting or defeating summary judgment. See Puder v. Buechel, 183 N.J. 428, 440-41 (2005);

---

(continued)
Super. 367, 372 (App. Div. 1990); see also Alberti v. Civil Service Com., 41 N.J. 147, 154 (1963); In re Pfizer, 6 N.J. 233, 237-38 (1951).

[5] Defendant's written opposition states in its entirety:

> Defendant asks that the court reinstate the complaint and list for trial. The complain[t] was stayed because of the bankruptcy filing. The defendant did not comply with the time tables because of the pending bankruptcy. The bankruptcy being dismissed leaves me the defendant in a position where I wish to oppose the complaint and the summary judgment.
>
> The basis for the opposition is the UNCONSCIONABLE nature of the contract. The contract is a contract of [a]dhesion and therefor[e] should have reasonable expectations.
>
> The denying of the plaintiff's motion in no way inhibits them from bringing a new motion or reinstatement of the old motion to pursue the damages they seek. Whereas granting the [p]laintiff's motion does not allow defendant his day in court.
>
> I ask with respect that the [p]laintiff's motion be denied.

Cortez v. Gindhart, 435 N.J. Super. 589, 606 (App. Div. 2014); Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999).

We, thus, reject the argument that the judge erred in granting summary judgment.

### III

The heart of defendant's appeal lies in the argument that an impecunious pro se litigant, without the wherewithal to understand the requirements of the rules governing civil practice, may be relieved of the consequences of that failure.

We agree that Rule 4:50-1(f), which permits relief from orders or judgments for reasons not provided in the rule's other subsections, allows for relief in circumstances such as this. Our courts have long adhered to the view that subsection (f)'s boundaries "are as expansive as the need to achieve equity and justice." Court Invest. Co. v. Perillo, 48 N.J. 334, 341 (1966); see also US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 484 (2012); Housing Auth. of Town of Morristown v. Little, 135 N.J. 274, 286 (1994); In re Estate of Thomas, 431 N.J. Super. 22, 34 (App. Div. 2013); Parker v. Marcus, 281 N.J. Super. 589, 593 (App. Div. 1995), certif. denied, 143 N.J. 324 (1996). Judge Havey explained for this court — in holding that a litigant may, in appropriate circumstances, be relieved of the

consequences of his attorney's negligence in the conduct of a case — that the application of the rule turns on the timeliness of the relief sought, the reasons for the movant's earlier failure to comport with the rules, the movant's degree of fault or blamelessness as opposed to his attorney's fault or blame, and the prejudice that would accrue to the other party if relief were granted. Ibid. Appropriate applications of these factors have excused litigants from the negligence of their attorneys in failing to answer interrogatories or other discovery requests. See, e.g., Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 195-96 (App. Div. 1985).

We find this approach equally applicable where a party has negligently represented himself. To be sure, we do not mean to suggest a self-represented party is entitled to a second chance in all instances — far from it. We merely hold that a pro se litigant is entitled to nothing less than that to which a litigant is entitled when represented by a negligent attorney. That is, as we held in Rubin v. Rubin, 188 N.J. Super. 155, 159 (App. Div. 1982), pro se litigants are not entitled to greater rights than litigants who are represented by counsel. But we also recognized in Rubin — in concluding that a self-represented litigant was deprived of a meaningful opportunity to be heard due to a lack of understanding of motion practice — that it is

12

"fundamental that the court system . . . protect the procedural rights of all litigants and to accord procedural due process to all litigants." Ibid. See also Midland Funding LLC v. Alfano, 433 N.J. Super. 494, 500-01 (App. Div. 2013).

Here, in seeking relief from the summary judgment entered against him, defendant asserted he could not then afford an attorney and that, in attempting to represent himself, he did not understand the consequences of his failure to respond to plaintiff's requests for admissions or what he was required to submit in order to defeat a motion for summary judgment. Had defendant been represented by an attorney whose same acts or omissions led to the same result, the guidelines provided in cases such as Parker would have authorized the granting of Rule 4:50 relief. We think defendant is entitled to the same consideration.

To say that the rule authorized relief, however, does not mean that relief should be granted. We simply remand for a consideration of these principles in light of defendant's assertions in his Rule 4:50 motion. The judge appears to have denied the motion solely because he was satisfied that defendant had a prior opportunity to respond to the ultimately successful summary judgment motion. This was insufficient because the judge did not consider why defendant had so failed and whether

principles of fairness and equity permit relief from the consequences. Defendant was entitled to have his Rule 4:50 motion examined in light of the factors outlined in the authorities discussed above. We, thus, remand for that purpose.

IV

On remand, the judge should consider defendant's assertions regarding his earlier failures in the litigation. As to one of the applicable factors — the timeliness of the Rule 4:50 motion — we reject the judge's conclusion that defendant's delay was unreasonable. Indeed, that delay paled in comparison to plaintiff's long delay in commencing the action. And we would note in this regard that in many cases — and this may be one — the prejudice incurred by the opposing party may be redressed in ways other than the denial of the motion; Rule 4:50-1 authorizes the granting of relief "upon such terms as are just." See ATFH Real Prop. v. Winberry Rlty., 417 N.J. Super. 518, 527-29 (App. Div. 2010), certif. denied, 208 N.J. 337 (2011).[6]

We would lastly observe that the trial judge's ruling appears to be based in part on his determination that there was

---

[6] In considering the imposition of just terms, the judge must be mindful that the terms authorized by Rule 4:50-1 are not "to punish or sanction" but to ameliorate the prejudice to the other party resulting from the granting of relief. Regional Constr. Corp. v. Ray, 364 N.J. Super. 534, 543 (App. Div. 2003).

no merit in defendant's contention that the contract was unconscionable. Certainly, if that were so, the judge's disposition would have been correct; the granting of Rule 4:50 relief would be a futile exercise if plaintiff remained entitled to judgment as a matter of law. See US Bank Nat'l Ass'n, supra, 209 N.J. at 469 (observing, in quoting from Schulwitz v. Shuster, 27 N.J. Super. 554, 561 (App. Div. 1953), that "[i]t would create a rather anomalous situation if a judgment were to be vacated . . . only to discover later that the defendant had no meritorious defense"). But — once defendant provided substance to his earlier conclusory claims — the judge never examined the parties' contentions in light of applicable legal principles. Indeed, the judge largely relied on his earlier holding. The worth of defendant's contentions should be examined in light of two factors: procedural unconscionability, which "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process," and substantive unconscionability, which generally involves harsh or unfair one-sided terms. See Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564-66 (Ch. Div. 2002) (quoted with approval in Muhammad v. Cnty. Bank, Rehoboth Beach, 189 N.J. 1, 15 (2006),

15

cert. denied, 549 U.S. 1338, 127 S. Ct. 2032, 167 L. Ed. 2d 763 (2007)). These two factors do not "have equal effect but work together, creating a 'sliding scale' of unconscionability." Sitogum, supra, 352 N.J. Super. at 565-66 (cited with approval in Delta Funding Corp. v. Harris, 189 N.J. 28, 40 (2006)). In concluding that defendant's unconscionability claim was without merit, the judge did not examine defendant's factual assertions in light of these principles.

V

The order under review is vacated, and the matter remanded for further consideration of defendant's motion to be relieved of the consequences of his failure to adequately represent himself in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION